Argued and submitted September 24, 1997, affirmed January 21, 1998

Craig BAUMANN,
*Appellant,*

*v.*

NORTH PACIFIC INSURANCE COMPANY,
a corporation,
*Respondent.*

(9602-01135; CA A94399)

952 P2d 1052

George M. Joseph, Judge pro tempore.

Robert E. L. Bonaparte argued the cause for appellant. With him on the briefs was Bonaparte, Elliott, Ostrander & Preston, P.C.

Gene D. Kennedy argued the cause for respondent. With him on the brief was Seidl & Rizzo.

Before De Muniz, Presiding Judge, and Deits, Chief Judge,* and Haselton, Judge.

DE MUNIZ, P. J.

---

* Deits, C. J., *vice* Richardson, S. J.

**DE MUNIZ, P. J.**

Plaintiff insured appeals the trial court's entry of summary judgment in favor of defendant insurer. Plaintiff assigns error to the trial court's interpretation of the "owned property" exclusion in his insurance policy to exclude coverage for the environmental cleanup costs he incurred. We affirm.

Plaintiff is the owner of real property in Milwaukie, Oregon (the property). Defendant provided homeowner's insurance[1] to plaintiff. In October 1995, plaintiff contracted with Goodman Bros., Inc. (Goodman) to decommission an underground fuel oil storage tank located on the property. A soil sample was taken from the ground beneath the tank after the tank had been removed. On October 26, 1995, Goodman reported to plaintiff and to the Oregon Department of Environmental Quality (DEQ) that it had detected soil contamination. OAR 340-122-0220. On October 27, 1995, DEQ notified plaintiff that he would be responsible for the cleanup of any petroleum contamination from the tank. OAR 340-122-0205 through OAR 340-122-0360. That same day, plaintiff notified defendant of the contamination.

Plaintiff complied with DEQ's order by completing the cleanup of all contamination resulting from the release of the heating oil from the underground storage tank, employing Goodman as an environmental cleanup expert to remove the contamination. Goodman used hand augers to bore holes into the ground to determine the extent of the contamination. The soil contamination extended 14 feet below the surface. The area groundwater level was 45.5 feet below the surface.

During the site cleanup, Goodman removed six tons of contaminated soil and transported it to a recycling facility. On November 17, 1995, Goodman completed the cleanup. In January 1996, Goodman filed a final report with DEQ (Goodman's report) in support of plaintiff's request for a ruling that

---

[1] First-party property insurance provides coverage for the cost of remedying physical damage to an insured's own property. Liability coverage is intended to provide indemnity for costs incurred by the insured to remediate damage to property owned by a third party. Defendant asserts that plaintiff is bringing his claim under the liability portion of his policy.

the decommission, removal, and cleanup of the underground storage tank was complete and that no further action would be required. Goodman's "Journal of Cleanup Activity" details the decommission of the underground tank and the cleanup of the contamination. The "Summary-Conclusions-Recommendations" section states that there was no evidence of groundwater involvement. However, a statement appearing at the bottom of the "Journal of Cleanup Activity" notes that "[t]he contaminated water * * * [was] transported to the Goodman facility for future recycling." On January 16, 1996, Goodman filed an addendum report stating that "no water was removed from this site and no water entered the excavation or any of the boreholes."

After the cleanup was completed, plaintiff sought indemnification from defendant for the costs he incurred in removing the contamination. Defendant denied coverage, asserting the owned property exclusion in plaintiff's insurance policy. Plaintiff's lawsuit followed. Defendant moved for summary judgment, and the trial court granted defendant's motion.

Plaintiff assigns error to the trial court's entry of summary judgment in favor of defendant. The trial court's order granting defendant's motion provides, in part:

"1. The record demonstrates that all property damage at issue was confined solely to the property owned by plaintiff; and on property owned by plaintiff.

"Therefore, the Court concludes that defendant has no duty to indemnify plaintiff because the owned property exclusion in defendant's insurance policy applies."

In an appeal from an order granting summary judgment, we must determine whether, viewing the evidence in the light most favorable to the party opposing the motion, there is a genuine issue of material fact and whether the moving party is entitled to judgement as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997); *Seeborg v. General Motors Corp.*, 284 Or 695, 699, 588 P2d 1100 (1978).

We first address an issue raised by plaintiff at oral argument. Plaintiff argues that summary judgment should

not have been granted because there is a material issue of genuine fact as to whether third-party property was damaged by the contamination. In support of that assertion, plaintiff, at oral argument, pointed to the statement in Goodman's report to DEQ that "the contaminated water * * * was removed from the site."[2] Plaintiff contends that contamination of groundwater constitutes damage to third-party property. Defendant counters that plaintiff is barred from raising this issue because he failed to raise it in the trial court. We agree with defendant.

■    Before we may address whether a trial court committed an error, the adversely affected party must have preserved the alleged error in the trial court and raised the issue on appeal by an assignment of error in its opening brief. ORAP 5.45(2);[3] *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991). To determine whether an issue is preserved for appellate review, a finding that the issue was raised in the trial court below is essential. *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988). The purpose of this rule is to allow the trial court to understand and correct any error. *State v. Brown*, 310 Or 347, 356, 800 P2d 259 (1990). Plaintiff did assign error to the granting of summary judgment. However, the issue presented at oral argument, that the statement in Goodman's report creates an issue of material fact, was not presented to the trial court or in plaintiff's opening brief on appeal. Whatever merit the issue might have, it was not raised until oral argument. That is too late. We therefore decline to consider the argument. *See State v. Wrenn*, 150 Or App 96, 100-01, 945 P2d 608 (1997).

We now turn to the arguments raised in plaintiff's brief. Under the policy, liability coverage excludes claims for

---

[2] This report was attached as an appendix to defendant's motion for summary judgment submitted to the trial court below and to its brief submitted to this court.

[3] ORAP 5.45(2) provides:

"No matter assigned as error will be considered on appeal unless it was preserved in the lower court and assigned as error in the party's opening brief; provided that the appellate court may consider errors of law apparent on the face of the record."

*See also* ORAP 5.45(1) ("Assignments of error are required in all opening briefs of appellants and cross appellants.").

"property damage to property owned by the insured." Plaintiff argues that the meaning of the owned property exclusion is ambiguous and therefore should be construed against defendant. Defendant argues that the exclusion's meaning can be easily defined by the plain meaning of the words "owned property" and is not ambiguous. *See Martin v. State Farm Fire and Casualty Co.*, 146 Or App 270, 932 P2d 1207, *rev den* 325 Or 491 (1997).

The Oregon Supreme Court has established a specific framework for interpretation of insurance policies. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 836 P2d 703 (1992). While employing this framework, "[t]he primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties." *Id.* at 469 (citing *Totten v. New York Life Ins. Co.*, 298 Or 765, 770, 696 P2d 1082 (1985)). We begin with the terms and conditions of the policy itself. ORS 742.016(1).[4] If the term at issue is not defined in the policy, the next step is to look to the plain meaning of the term. *Id.* at 474. If there is more than one plausible interpretation of the term's plain meaning, each interpretation must be scrutinized in the light of the specific context in which the term is used in the policy and also in the broad context of the policy as a whole. *Id.* at 475. If, after scrutiny, both proffered interpretations remain reasonable, the rule of interpretation against the drafter applies. *Id.*

Applying this framework, we begin with the terms and conditions of the policy. The insurance policy does not define the term owned property. Therefore, we must examine the plain meaning of the term. Plaintiff and defendant offer competing interpretations of the term. Defendant claims that its plain meaning includes damage to property owned by the insured or that serves as his or her residence. Plaintiff contends that soil cleanup is essential to prevent potential damage to groundwater and cannot constitute property damage to plaintiff's own property within the plain meaning of the term. Alternatively, plaintiff argues that contamination of an

---

[4] ORS 742.016(1) provides, in part:

"Except as provided in ORS 742.043 [relating to oral binders], every contract of insurance shall be construed according to the terms and conditions of the policy."

insured's property constitutes third-party property damage, and is not within the meaning of owned property, because such contamination damages the state's regulatory interest in maintaining a clean environment.[5] We conclude that neither of plaintiff's suggested interpretations is reasonable in context or in the context of the policy as a whole. Because only defendant's interpretation of owned property is reasonable, no ambiguity exists.

In determining the reasonableness of plaintiff's suggested interpretations, our initial step is to scrutinize each interpretation in the context of its use in the policy. *Hoffman*, 313 Or at 474. The policy provides, in relevant part:

"DEFINITIONS

"\* \* \* \* \*

"G.  **occurrence** means:

"1.  an accident, including continued or repeated exposure to substantially the same harmful conditions, which results, during the policy period, in:

"\* \* \* \* \*

"b)  **property damage**[.]

"\* \* \* \* \*

"I.  **property damage** means physical injury to, destruction of, or loss of the use of tangible property.

"\* \* \* \* \*

"SECTION II - LIABILITY COVERAGES

"COVERAGE E - PERSONAL LIABILITY

"If a claim is made or a suit brought against an **insured** for damages because of \* \* \* property damage caused by an **occurrence** to which this coverage applies, we will:

"A.  pay up to our limits of liability for the damages for which the **insured** is legally liable.

---

[5] Plaintiff argues that the state's regulatory interest in maintaining a clean environment is derived from ORS 465.200(11), which defines environment as "the waters of the state, any drinking water supply, *any land surface* and subsurface strata and ambient air." (Emphasis supplied.)

"* * * * *

## "SECTION II - EXCLUSIONS

"* * * * *

"B.    **Coverage E - Personal Liability**, does not apply to:

"* * * * *

"2.    **property damage** to property owned by an **insured**;

"3.    **property damage** to property rented to, occupied or used by, or in the care of the **insured**." (Emphasis in original.)

■■    We reject plaintiff's argument that the *potential* for third-party property damage should be covered. Under the policy's terms, for liability coverage to arise, actual damage must have occurred to the property of a third party. The policy's definition of property damage does not encompass the threat or potential for harm.

■■    For the same reason, plaintiff's alternative interpretation, that damage to the state's regulatory interest constitutes third-party damage, also fails. Under the policy's definition, "property damage" does not result unless an "occurrence" produces damage to tangible property. A regulatory interest is not tangible property.

We next examine plaintiff's interpretations in the light of the policy as a whole. Both of the interpretations suggested by plaintiff conflict with the provisions of the following section. In Section I, regarding property coverages, the policy states, in relevant part:

## "SECTION I - EXCLUSIONS

"A.    We do not insure for loss or damage caused by any of the following excluded events as described in 1. through 11. below. Loss or damage will be considered to have been caused by an excluded event if that event (1) directly and solely results in loss or damage; or (2) initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

"1.  **Ordinance or Law**, meaning any ordinance or law:
"* * * * *

"c.   requiring any **insured** * * * to * * * clean up, remove, contain, treat, detoxify, or neutralize * * * the effects of pollutants.

"Pollutant means any * * * liquid * * * contaminant, including * * * chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

"This exclusion applies whether or not the property has been physically damaged." (Emphasis in original.)

Because of the absolute pollution exclusion found in the property exclusion section of the policy, giving effect to either of plaintiff's interpretations would override the policy's coverage provisions for damage to the insured's own property. Specifically, it would nullify the pollution exclusion by extending third-party property liability coverage to first-party property damage and would eliminate the distinction between the two types of coverage. Oregon law requires that insurance provisions be interpreted reasonably to avoid nullification of other parts of the policy. *Hoffman*, 313 Or at 474. Plaintiff's interpretations do not withstand scrutiny in the light of the policy as a whole.

■    Plaintiff both owns and occupies the property that suffered damage. Because neither of plaintiff's interpretations of the owned property exclusion is plausible, we conclude that no genuine issue of material fact exists regarding damage to third-party property and that defendant is entitled to judgment as a mattter of law. Accordingly, the trial court did not err in granting summary judgment for defendant.

Affirmed.