Argued and submitted January 20, 1999, reversed and remanded February 9, 2000

Barbara Keller HORTON,
*Appellant,*

*v.*

PREPARED MEDIA LABORATORY, INC.,
an Oregon corporation,
*Respondent,*

*and*

MEDA, INC.,
an unregistered foreign corporation,
Renee Fellman and A. Ronald Torland,
*Defendants.*

(9702-00852; CA A101019)

997 P2d 864

William P. Horton argued the cause and filed the briefs for appellant.

Timothy R. Volpert argued the cause for respondent. With him on the brief were Kathleen R. Dent and Davis Wright Tremaine, LLP.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.*

LANDAU, P. J.

---

* Brewer, J., *vice* Warden, S. J.

## LANDAU, P. J.

Plaintiff appeals a summary judgment dismissing her claim for breach of contract arising out of defendant's[1] failure to pay her severance benefits as provided in a severance policy that defendant purported to revoke before plaintiff was terminated. Plaintiff argues that she is entitled to the severance benefits as a matter of law, because she already had earned them under the terms of the policy before the purported revocation. Defendant argues that severance benefits are not "earned" and that, in any event, plaintiff's right to receive them always was contingent upon defendant's right to revoke the severance policy at any time. We agree with plaintiff and reverse and remand.

The relevant facts are not in dispute. Plaintiff began working for defendant in 1979. In 1993, defendant adopted a severance pay policy:

"In the event of a permanent layoff and providing the employee has satisfactorily completed the initial **introductory** period, the following schedule for written notice or pay in lieu of notice shall apply:

| "If Time of Employment Has Been at Least: | | Notice or Severance Pay |
|---|---|---|
| "U.S. | 1 year | 1 week |
| | 2 years | 2 weeks |
| | 3 years | 3 weeks |
| | 5 years | 4 weeks |
| | 10 years | 3 months |

"\* \* \* \* \*

"[Defendant] reserves the right to alter, reduce, or eliminate any pay practice, policy, or benefit without notice **except for those provisions required by law.**"

(Underscoring and boldface in original.) Plaintiff signed a form of acceptance of the terms of the severance policy on October 19, 1993.

---

[1] We refer only to defendant Prepared Media Laboratory, Inc. Defendants Meda, Inc., Renee Fellman, and A. Ronald Torland are not parties to the claim at issue on appeal.

Meanwhile, defendant began experiencing financial difficulties. Among other things, it reduced employee salaries by 10 percent and revoked its severance policy, effective January 25, 1995. Plaintiff continued to work for defendant for another year. On January 17, 1996, defendant terminated plaintiff with one days' notice.

Plaintiff initiated this action for breach of contract. She alleged that she had performed all the conditions necessary to become entitled to either three months' notice or three months' severance pay, in accordance with the terms of the severance policy. Defendant moved for summary judgment, arguing that plaintiff was not entitled to any severance benefits, because the severance policy had been revoked by the time she was terminated. Defendant supported its motion with a copy of the severance policy itself, various resolutions of its board of directors, and an affidavit of the chairman of the board. Plaintiff did not dispute the facts as asserted by defendant, but argued that the revocation of the severance policy could not preclude her from obtaining benefits that already had accrued before the revocation. The trial court granted defendant's motion and entered summary judgment dismissing plaintiff's breach of contract claim.

On appeal, plaintiff argues that the trial court erred in entering summary judgment for defendant. She advances two theories in support of her appeal: (1) defendant was not entitled to summary judgment because, as a matter of fact, it did not revoke the severance policy; and (2) defendant was not entitled to summary judgment because, as a matter of law, it was not entitled to deprive her of benefits that she had earned at the time of her termination. Defendant responds that the first argument was not preserved, plaintiff having failed to assert to the trial court that the severance policy had not actually been revoked. Defendant further responds that the second argument is not well-taken in light of the terms of the severance policy itself, which reserves to defendant the right to revoke or change its terms at any time.

■ We begin with plaintiff's assertion that defendant failed to demonstrate, as a matter of fact, that it revoked the severance policy. We review the trial court's entry of summary judgment to determine whether there is a genuine

issue of material fact and whether the moving party demonstrated that it is entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 407, 939 P2d 608 (1997).[2] Plaintiff argues that the documentation defendant supplied to the trial court in support of its summary judgment motion fails to establish that the board of directors actually revoked the severance policy. Plaintiff, however, failed to raise that matter to the trial court, and therefore she is precluded from raising it for the first time on appeal. *Baumann v. North Pacific Ins. Co.*, 152 Or App 181, 185, 952 P2d 1052, *rev den* 327 Or 621 (1998).

We turn, then, to plaintiff's assertion that, as a matter of law, she cannot be deprived of benefits that had accrued before the revocation of the severance policy. Plaintiff argues that, in essence, the severance policy constituted a unilateral contract and that, once she performed in accordance with its terms, defendant could not revoke it. Defendant first responds that there can be no contractual right to unused severance benefits, that they are "unaccrued and unvested" and may be unilaterally eliminated "without consideration of the employee's interest." In the alternative, defendant argues:

> "Even if the policy was a contract, it was a contract that expressly allowed [defendant] to terminate the severance pay benefit without notice. [Defendant] terminated severance pay long before plaintiff was laid off. It makes no difference whether the policy created a contract or whether plaintiff would have been entitled to severance benefits if the policy had not been terminated. It was terminated. There was no severance policy when plaintiff left [defendant]. That is the end of the story."

The story is not quite that simple, however.

■■ An employer generally is free to set the terms and conditions of employment, and the employee is free to accept or reject those terms and conditions. *State ex rel Roberts v. Public Finance Co.*, 294 Or 713, 716, 662 P2d 330 (1983). The offering of certain terms and conditions may amount to an offer of a unilateral contract, however. In such cases, an

---

[2] Neither party raises, and we do not address, the effect of recent amendments to ORCP 47 C.

employee's part performance precludes the employer from revoking what it offered in exchange for the employee's work. *See generally Oregon State Police Officers' Assn. v. State of Oregon*, 323 Or 356, 365-71, 918 P2d 765 (1996).

In *Harryman v. Roseburg Fire Dist.*, 244 Or 631, 420 P2d 51 (1966), for example, the defendant employer adopted a sick leave policy that provided for cash in lieu of accumulated sick leave upon termination from employment. The plaintiff employee had accumulated 47 days of sick leave when the employer revoked the policy. Some time after that revocation, the employee was terminated. When he requested the cash in lieu of his accumulated 47 days of sick leave, the employer refused, contending, among other things, that it was not obligated to pay for the sick leave because the sick leave policy had been revoked before his termination. The court held that the employer could not escape its obligation to comply with its promise to pay sick leave:

> "When plaintiff entered upon his employment with defendant he was advised that he would receive an allowance for accumulated sick leave upon termination of employment. He accepted employment upon the assumption that the allowance for sick leave was a part of his compensation for services. Since it was a part of the inducement to accept employment, it can be regarded as a contractual term of plaintiff's employment. Defendant could not, therefore, deprive plaintiff of the allowance after he had earned it."

*Id.* at 634-35 (footnote omitted).

Similarly, in *Taylor v. Mult. Dep. Sher. Ret. Bd.*, 265 Or 445, 510 P2d 339 (1973), the defendant employer adopted a retirement benefits policy that applied to the plaintiff employee's position. The employee continued working for the employer for a period of nine months, at which time the employer amended the retirement policy to exclude the employee's position. When the employee claimed the right to admission to coverage under the retirement plan, the employer refused, arguing that, among other things, the amendment of the retirement policy precluded her participation in it. The court disagreed. Relying on *Harryman*, the court held that the employer's retirement policy constituted a unilateral contract, which could not be substantially

impaired upon the employee's part performance, that is, upon her continued employment during the time the policy was in effect. *Id.* at 450-51.

Likewise, in *McHorse v. Portland General Electric*, 268 Or 323, 521 P2d 315 (1974), the defendant employer offered total disability benefits to its employees, subject to the employer's right to discontinue the benefits plan at any time. The plaintiff employee worked while the disability benefits plan was in place until he terminated his employment on his doctor's orders. The employer terminated the employee's benefits, claiming authority to do so under its express reservation of the right to discontinue the plan at any time. The court held that the employer lacked the authority to do that, notwithstanding the reservation:

> "[I]n the situation where the employee has satisfied all conditions precedent to becoming eligible for benefits under a plan, the better reasoned view is that the employee has a vested right to the benefits. This view sees the employer's plan as an offer to the employee which can be accepted by the employee's continued employment, and such employment constitutes the underlying consideration for the promise."

*Id.* at 331.

In this case, as in *Harryman*, *Taylor*, and *McHorse*, defendant employer offered a benefit to its employees in exchange for their continued work. It was, in effect, a contractual term of the employees' continued employment. Plaintiff in fact continued her employment, thereby precluding defendant from revoking any benefits that had been accrued to the point of revocation. At the point of revocation, in January 1995, plaintiff had satisfied all conditions entitling her to severance benefits of either three months' notice or three months' pay. Defendant certainly retained the right to revoke its severance policy, but as in *Harryman*, *Taylor*, and *McHorse*, that revocation cannot substantially impair plaintiff's entitlement to benefits to which she already had become entitled.

Defendant insists that severance benefits simply are different from the benefits involved in the foregoing cases.

For that proposition, defendant relies on a federal court decision, *Joanou v. Coca-Cola Co.*, 26 F3d 96 (9th Cir 1994), in which the court held that an employer's severance benefits plan was not subject to certain stringent requirements of the federal Employee Retirement Income Security Act (ERISA), 29 USC § 1001 *et seq.* Defendant does not explain, and we do not understand, the relevance of that decision to a case in which no one has argued, much less proven, that the severance benefits policy at issue was part of an employee benefits plan that is subject to ERISA. *See Shaw v. PACC Health Plan, Inc.*, 322 Or 392, 398-404, 908 P2d 308 (1995) (ERISA applies only to benefits plans "established or maintained" pursuant to federal law).

Reversed and remanded.