Argued and submitted December 14, 1998, affirmed March 8, petition for review denied July 5, 2000 (330 Or 375)

Glen SLATE,
*Appellant,*

*v.*

SAXON, MARQUOIT, BERTONI & TODD,
attorneys at law, a partnership;
Kenneth W. Saxon, James T. Marquoit,
and Gary B. Bertoni, individuals,
*Respondents.*

(9609-06865; CA A99631)

999 P2d 1152

Jacqueline L. Koch argued the cause for appellant. With her on the briefs was Findling & Johnson LLP.

James T. Marquoit argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

Wollheim, J., dissenting.

**DEITS, C. J.**

In this breach of contract action, plaintiff appeals from a judgment granting summary judgment in favor of defendants. On appeal, plaintiff argues that defendants breached an agreement to hire him and, in the alternative, that he is entitled to recover damages under a promissory estoppel theory. We affirm.

On review of a summary judgment, we determine whether there are any genuine issues of material fact and, examining the evidence in the light most favorable to the nonmoving party, whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

The facts in this case do not appear to be in dispute. Plaintiff worked as a law clerk for the defendant attorneys, beginning in June 1992. In December 1993, apparently after plaintiff's clerkship was completed, defendants offered him a position as an associate attorney. The offer was premised on the condition that plaintiff take and pass the Oregon bar examination. The offer also was contingent on the renewal of defendants' juvenile court and indigent defense contracts. The offer was not for a fixed term and did not contain a "termination only for cause" provision. Plaintiff accepted defendants' offer and took the February 1994 Oregon bar examination. Plaintiff passed the bar examination, and defendants' juvenile court and indigent defense contracts were renewed. In March 1994, defendants advised plaintiff that they were terminating the planned employment arrangement, although plaintiff had not yet begun working for them.

Plaintiff sued defendants, seeking relief for the termination. Plaintiff contends that, because he had accepted defendants' job offer, he took the Oregon bar when he otherwise might not have and did not seek other employment opportunities. Defendants moved for summary judgment. The trial court granted the motion and plaintiff appeals, assigning error to the ruling. We hold that defendants are entitled to judgment as a matter of law, because plaintiff has no right of action under either of his alternative theories.

Subject to "some contrary agreement" or to other limitations that neither party suggests are present here, an employment contract implicitly creates an "at will" arrangement that may be terminated by either the employer or the employee at any time, for any reason or for no reason. *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 620, 733 P2d 430 (1987). Such a "termination by the employer or employee is not a breach of contract." *Nees v. Hock*, 272 Or 210, 216, 532 P2d 512 (1975). The parties agree that the contract of *employment* between them was an "at will" agreement under the foregoing principles. Plaintiff argues that he nevertheless has a viable breach of contract claim against defendants, because:

> "Defendants' termination of their contract with plaintiff was a breach of an agreement for employment, not a breach of the employment-at-will contract itself. Whether they could or would have fired him after he began working for them is not the issue. Plaintiff reasonably relied on defendants' job offer, and they had reason to know that he would change his plans and incur expenses based on that promise, which he did."

It is unclear whether defendants accept plaintiff's thesis that there was or could be an "agreement for employment" that was somehow separate from the prospective "employment contract itself."[1] Be that as it may, the crux of defendants' position is that, since they could terminate the employment itself at will, they also could "withdraw [their] offer of employment" at will, without incurring liability. Plaintiff's brief ably captures the essence of defendants' argument, to which it then responds as follows:

> "Defendants * * * argue that, as a matter of law, plaintiff cannot prevail on his breach of contract claim because defendants' offer to plaintiff was for employment 'at will.' Defendants contend that it is illogical to allow an employee-at-will to recover damages if the employer terminates him

---

[1] Defendants' brief repeatedly refers to the withdrawal or termination of their *offer*. In any event, they do not expressly make the possibly meritorious and decisive argument that they made an offer, that defendant accepted it, that there was consideration in the form of mutual promises of future performance, and that there was accordingly only *one* contract with *one* implied termination provision that could as well be invoked while the contract was in an executory phase as after performance had begun. We therefore will not decide the case on that ground.

*before* he commences work because the employee could not recover contractual damages if he were fired one hour *after* beginning work. But * * * defendants' logic does not hold water. The mere fact that defendants could have fired plaintiff at any time after hiring him does not absolve them of all liability for damages caused by their decision to breach their promise to employ him. Contrary to defendants' assertion, it does matter whether defendants repudiated the contract before plaintiff commenced employment instead of firing him after he began." (Emphasis plaintiff's.)

Although the question does not appear to have arisen before in any reported Oregon decision, there are numerous cases from other jurisdictions that deal with the actionability of an employer's termination of an at will employment agreement before the employee has begun his or her performance of the job. Cases related to the issue are assembled in Tracy A. Bateman, Annotation, *Employer's State-Law Liability for Withdrawing, or Substantially Altering, Job Offer for Indefinite Period Before Employee Actually Commences Employment*, 1 ALR 5th 401 (1992). In relatively equivalent numbers, the courts deciding those cases have resolved the issue in both of the possible ways, with respect both to claims based on breach of contract and claims based on promissory estoppel.

For purposes of a case like this one, which presents the issues in fairly pristine form (*i.e.*, there are no variations from the at will model in the terms of the parties' agreement, and the only claimed consequences of defendants' action is that plaintiff secured his license to practice law in Oregon rather than elsewhere and did not seek alternative employment while he thought he had this job), we agree with the conclusion of the courts that have held that there is no cause of action in these circumstances.

In our view, it would be completely illogical to hold that an employer is exposed to liability if it invokes the right to terminate at will before the employee begins working but is absolved from liability if it defers doing so until immediately after the employee first reports for work. In addition to being illogical, such a holding would also be most undesirable in its consequences. It would serve the interests of no one—least of all new professional persons in search of work—to

discourage putative employers from discharging them earlier rather than later, under circumstances where there is no possibility that an actual employment relationship will ever exist. To those who might say that we should not base our decision on social or policy concerns of that kind, as distinct from the terms of the parties' agreement, there is a simple answer: Our decision is completely consistent with the terms of the contract. Conversely, the parties and courts that have urged or acted on the opposite view of desirable policy have generally found it necessary to devise the fiction that one contract is really two in order to attain their objective.

Even given that fiction, however, plaintiff's argument does not succeed. His distinction between a contract *for* employment and a contract *of* employment does not alter the fact that, both before the time of performance and after, whatever contractual relationship there was between the parties was one that *related* to plaintiff's employment by defendants. As we have noted, the general rule in this state is that employment contracts are terminable at will unless they specify a duration or different conditions for or methods of termination. Plaintiff offers no persuasive reason why that general rule should not apply as much to the post-acceptance, but pre-performance, phase of his contractual relationship with defendants as to the post-performance phase, even if the two phases are viewed as two separate contracts. The parties did not specify a duration or conditions of termination other than at will in connection with either phase.

The dissent's reliance on *Taylor v. Mult. Dep. Sher. Ret. Bd.*, 265 Or 445, 510 P2d 339 (1973), and similar cases, is misplaced. As we recently explained in *Horton v. Prepared Media Laboratory, Inc.*, 165 Or App 357, 997 P2d 864 (2000), those cases stand for the proposition that an employer may not unilaterally revoke benefit or similar programs that their employees have accepted "in exchange for their continued work," to the extent that the employer's action purports to impair "any benefits that [an employee has] accrued to the point of revocation." 165 Or App at 363. In this case, conversely, plaintiff had accrued nothing, except the prospect of retaining an employment relationship with defendant as long as both chose to continue it. Defendants chose to terminate that relationship in the precise manner contemplated by

the parties' agreement, and plaintiff has no right of action for breach of contract.

██ We also hold, although for reasons that appear to be somewhat different from the trial court's and defendants', that the court was correct in granting summary judgment as to plaintiff's promissory estoppel theory. Assuming that promissory estoppel ever could provide a basis for recovery under circumstances of this general kind, *but see DeJonge v. Mutual of Enumclaw*, 315 Or 237, 241, 843 P2d 914 (1992), it cannot here. Among the elements that a plaintiff must establish to prevail on a theory of promissory estoppel is that he actually relied on the other party's promise with a resulting "substantial change of position." *See Neiss v. Ehlers*, 135 Or App 218, 223, 899 P2d 700 (1995).

█ Given the established facts here[2] and our holding that the promise of employment was terminable on the same at will basis that the employment itself would have been, there could have been no reasonable basis for reliance on and no substantial change of position that was attributable to the promise *per se.* The necessary premise of plaintiff's argument is that he relied on and changed his position in response to the promise that he would be employed for at least an infinitesimal period of time, independently of the promised infinitesimal period of employment itself. Plaintiff alleges that he was damaged "by foregoing other job search activities and refraining from registering for and taking the Massachusetts bar examination and accepting a practice opportunity in that state." However, the same losses would have been incurred if plaintiff had been discharged immediately after he came to work rather than before. It is circular and not based on reality to argue, as he does, that either his reliance or his change in position was attributable to the promise of at will employment rather than the at will employment contract itself. Under *Restatement (Second) of Contracts* § 90 (1981), on which the promissory estoppel doctrine in this state is based,

---

[2] This case does not involve a person with an established career—as distinct from the threshold phase where plaintiff is situated—that he or she is induced to change by a promise of alternative employment. In the unlikely event that such a person would be obliged to or would agree to an at will employment arrangement and ultimately pursues an action of this kind, we will deal with that situation when it arises.

*see Neiss*, the doctrine may be invoked "if injustice can be avoided only by enforcement of the promise." No injustice would be avoided by allowing a party to achieve a remedy for revocation of the promise under circumstances that are logically and practically indistinguishable from a termination of the consummated contract for which no judicial remedy would be available. *See Sheets v. Knight*, 308 Or 220, 779 P2d 1000 (1989) (stating analogous conclusion with respect to party's reliance on implied duty of good faith and fair dealing as theory of recovery in connection with termination of at will employment contract).

Plaintiff relies on our statement in *Neiss* that "promissory estoppel [can] provide a basis for relief under circumstances where traditional contract remedies would not." 135 Or App at 228. Plaintiff argues that, if he is unable to pursue either a breach of contract or a promissory estoppel claim, then he "is caught in a '[C]atch 22' and cannot recover under either theory." However, we did not suggest in *Neiss* that there must be *some* judicial remedy for *every* inopportune vicissitude of life that does not constitute a breach of contract, nor does it seem to us to be a "Catch 22" situation that some events—distasteful though they may be—simply cannot result in a successful lawsuit. Unestimable as defendants' dealings with plaintiff may have been, the trial court correctly ruled that he has no right of action against them.

Affirmed.

**WOLLHEIM, J.,** dissenting.

Because I believe that defendants are not entitled to summary judgment as a matter of law, I dissent.

According to the majority, the issue here is an employer's right to terminate an at will employment agreement before the employee has begun work. I disagree. Plaintiff was not yet an employee who could be "terminated." Rather, the issue is whether defendants impermissibly revoked a unilateral contract on which plaintiff had begun performance. The following facts are significant: In October 1993, after plaintiff had been working for defendants for over one year, plaintiff informed defendants that, because of professional opportunities outside of Oregon, he did not intend to

take the Oregon bar examination unless he received a *firm* offer of employment from defendants. Several months later, defendants made that offer. However, that offer was not simply a promise by defendants to employ plaintiff in exchange for a promise by plaintiff to appear at work. Defendants conditioned their offer by: (1) requiring that plaintiff take and pass the Oregon bar examination and (2) making employment subject to the renewal of defendants' juvenile court indigent defense contract at the current compensation rate. When plaintiff took the bar examination, he began performance on defendant's unilateral contract, thereby proscribing defendant's right to revoke the offer.

As the majority notes, the usual rule in Oregon is that employment contracts are terminable at will, *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 620, 733 P2d 430 (1987), and that the at will principle can apply to one contract that covers the entire employment relationship. However, employers are free to alter the usual "at-will" rule by contrary agreement. *Id.* Here, plaintiff contends that, although his ultimate employment may have been at will, defendants proposed a unilateral contract by separately agreeing that they would hire him as long as two conditions were met. The consequence of the unilateral contract was to limit defendant's option not to employ plaintiff.

A unilateral contract exists when one party makes a promise in return for consideration other than a promise. *The Oregon Home Builders v. Crowley*, 87 Or 517, 534-35, 170 P 718 (1918). Here, defendants' promise was made in return for specific actions by plaintiff. Once plaintiff began performance, the unilateral contract offer was accepted and the parties entered into a unilateral contract.[1] The Oregon Supreme Court has recognized that an employer generally is free to set the terms and conditions of employment and the employee is

---

[1] I fail to see how the situation here differs from the traditional unilateral contract hypothetical where the contract is not based on mutual promises, but rather on a promise and the performance of an action. A typical unilateral contract hypothetical is: Company A agrees to pay manufacturer B $5 per widget if B delivers 10,000 widgets to A by June 15. On June 1, B ships 10,000 widgets to A. On June 2, prior to receiving the widgets, A attempts to revoke the contract. In such a situation, we would have no trouble concluding that Company A breached a unilateral contract.

free to accept or reject those terms and conditions. However, offering certain terms and conditions may amount to an offer of a unilateral contract. Once an offeree begins performance based on the terms of a unilateral contract offer, the offeror may not revoke the offer. *State ex rel Roberts v. Public Finance Co.*, 294 Or 713, 720 n 3, 662 P2d 330 (1983); *see McHorse v. Portland General Electric*, 268 Or 323, 331, 521 P2d 315 (1974) (employer may not terminate disability benefit plan that was in force during term of employee's employment despite express reservation of right to terminate benefit plan); *Taylor v. Mult. Dep. Sher. Ret. Bd.*, 265 Or 445, 450-51, 510 P2d 339 (1973) (employer cannot exclude employee from retirement benefits policy that was in effect and covered her while she worked); *Harryman v. Roseburg Fire Dist.*, 244 Or 631, 634-35, 420 P2d 51 (1966) (employer must pay former employee for accumulated sick leave even though employer later revoked the sick leave policy); *Horton v. Prepared Media Laboratory, Inc.*, 165 Or App 357, 997 P2d 864 (2000) (employer must pay severance benefits earned by employee even though employer later revoked severance benefits policy). Similarly here, defendants agreed to hire plaintiff, and he began performance of the agreement by taking the Oregon bar examination. At that point, defendants could not revoke their offer.

The majority states that my reliance on *Taylor*, *Horton* and similar cases is misplaced. My point in looking to those cases is not to imply that plaintiff is an employee who has already accrued a benefit (in fact, quite the opposite is true), but rather that, when obligations are undertaken in fulfillment of a unilateral contract, the contract cannot be revoked with impunity by the promising party merely because the employment itself is at will. Surely if the principles underlying unilateral contracts cannot be defeated during at will employment, then those principles cannot be defeated before employment. Furthermore, contrary to the majority's assertion that plaintiff has "*accrued nothing*" prior to revocation, plaintiff in this instance has accrued the detriment of having paid for, studied for and taken the Oregon bar examination, in fulfillment of the conditions of defendants' promise, when he would otherwise not have.[2]

---

[2] In both its breach of contract and promissory estoppel analysis, the majority opinion implies that the result might be different if the plaintiff were other than a

I consider the fact that plaintiff and defendant entered into a unilateral contract dispositive in this instance and therefore conclude that defendants are not entitled to summary judgment as a matter of law. I also find support for my result in case law from other jurisdictions. Although the majority of other jurisdictions that have examined agreements for future employment have not done so under facts where a unilateral contract was created, I find the rationale behind many of the cases to be applicable in situations akin to the present one.

I am persuaded by decisions from other jurisdictions holding that a prospective employee can sue his employer when an offer of employment is accepted and later revoked, either because the contract to employ is seen as a separate contract that is not at will or because recovery is based on a promissory estoppel theory. *See Comeaux v. Brown & Williamson Tobacco Co.*, 915 F2d 1264, 1270-73 (9th Cir 1990) (separate contract to employ plaintiff; court does not reach promissory estoppel theory because plaintiff is limited to reliance damages in any event); *Hackett v. Foodmaker*, 69 Mich App 591, 245 NW2d 140, 142 (1976) (separate contract to employ); *Bower v. AT&T, Technologies, Inc.*, 852 F2d 361, 363-64 (8th Cir 1988) (promissory estoppel); *Pepsi-Cola General Bottlers, Inc. v. Woods,* 440 NE2d 696, 699 (Ind App 1982) (same); *Grouse v. Group Health Plan, Inc.*, 306 NW2d 114, 116 (Minn 1981) (same). As the *Bower* court explained, "if damages sustained in reasonable reliance on an employer promise were not available, the effect of such a rule would be to allow the employer to take advantage of whatever benefits might accrue to him by his inducing a potential employee to leave behind home and/or steady employment [or to forgo other job opportunities] while at the same time being

---

"new professional person in search of work." I fail to understand why the stage of a person's professional career should be of legal significance in a review of summary judgment. It may be significant in the calculation of damages or in the foreseeability of certain issues, but here, it does not matter whether plaintiff was a new professional or a person with 20 years of experience. If the concern is that calculating damages suffered by a new professional are more difficult than calculating those suffered by an established professional, then we have consistently permitted actions to go forward despite that difficulty. *See MacLean & Associates v. American Guaranty Life*, 85 Or App 284, 296, 736 P2d 586, *rev den* 304 Or 55 (1987) ("If it is shown that a loss of profits probably occurred, mere uncertainty as to the exact amount lost will not preclude recovery.").

completely free of any obligation to keep his word." 852 F2d at 364.

Admittedly, some decisions have reached the opposite conclusion and have held that even when a prospective employee detrimentally relies on a promise of employment, no recovery may be had. *See White v. Roche Biomedical Laboratories, Inc.*, 807 F Supp 1212, 1214-20 (DSC 1992), *order aff'd* 998 F2d 1011 (4th Cir 1993) (rejecting both breach of express contract and promissory estoppel theories); *Morsinkhoff v. DeLuxe Laundry & Dry Cleaning Co.*, 344 SW2d 639, 643-45 (Mo App 1961) (same); *Ingram v. Fred Oakley Chrysler-Dodge*, 663 SW2d 561, 562 (Tex App 1983) (same); *Sartin v. Mazur*, 237 Va 82, 375 SE2d 741, 743 (1989) (same). *See also* Tracy A. Bateman, Annotation, *Employer's State-Law Liability for Withdrawing, or Substantially Altering, Job Offer for Indefinite Period Before Employee Actually Commences Employment*, 1 ALR 5th 401 (1992) (collecting cases both relying on and rejecting breach of contract and promissory estoppel theories).[3]

I reject the position that no recovery is available when an employee relies and acts on a promise of employment. First, that outcome is inconsistent with our Supreme Court's decisions regarding an employee's right to rely on an employer's unilateral contract offer as to the terms and conditions of employment and as to the irrevocable nature of such an offer. I see no reason to distinguish between a prospective employee's right to rely on a promise of employment and an employee's right to rely on a promise that benefits will follow from the employee's work. Second, as acknowledged by at least one court holding that a prospective employee cannot rely on a promise of employment, that outcome is a "harsh" one, "the result of which is that an employee who," for example, "resigns one job for another at-will employment does so

---

[3] The majority takes exception to the analytical approach that two contracts, as opposed to one, may exist in this instance. They claim that I find it "necessary" to create the "fiction" that two contracts exist. The majority of cases from other jurisdictions that have examined this issue have applied the analytical approach of recognizing two contracts where appropriate—regardless of whether the outcome was favorable to the employer or the employee. That is so because that approach follows established principles of contract law, not because it is a "fictional" construct that favors one party over another.

at his peril." *White*, 807 F Supp at 1220. Nothing requires us to reach such a harsh and unfair result when the contract itself calls for the prospective employee to undertake performance prior to employment.

I am also not convinced by the rationale of the majority and some other courts that an employee has no recourse when he or she has relied on an offer of employment that is later revoked. One reason given is that, if "the actual employment was [to be] terminable at will, it would be illogical to hold * * * that somehow the offer of such employment was not terminable at will." *Sartin*, 375 SE2d at 743. Whatever force that proposition may have in the abstract, nothing prevents an employer from agreeing to employ a prospective employee, providing that the employee satisfies certain conditions, so that the employer is no longer free to terminate that separate agreement for any reason or for no reason. That is what plaintiff claims happened here.

Another reason given by the majority for holding that a prospective employee has no recourse when an offer of employment is withdrawn is that the employee's reliance on the employer's promise is not reasonable. The promise of employment is, instead, considered to be "illusory since an employer who promises at-will employment has the right to renege on that promise at any time for any reason." *White*, 807 F Supp at 1219. As reasonable as that statement may sound in the context of a contract based on mutual promises that is still in an executory stage, that statement is not reasonable where an employer requires a prospective employee to satisfy certain conditions prior to employment. That statement assumes that the employer has not limited its option to terminate the agreement to employ the prospective employee. Plaintiff's theory here, however, is that defendants promised to hire him so long as he took and passed the bar examination and defendants' juvenile indigent defense contract was renewed. Both conditions were satisfied. Therefore, defendants limited their option not to hire plaintiff. This court has rejected the *per se* "no reasonable reliance on offers of employment" rationale relied on by the court in *White* and should do so again here. *See Albrant v. Sterling Furniture Co.*, 85 Or App 272, 275-76, 736 P2d 201, *rev den* 304 Or 55 (1987) ("The fact that defendants were offering plaintiff a

position which was terminable at will does not mean that she could not reasonably rely on representations they made.").[4]

The majority also states that "[i]t would serve the interests of no one * * * to discourage putative employers from discharging [prospective employees] earlier rather than later * * * ." The majority misconstrues the purpose of contract law. The purpose of contract law is not to punish the breaching party, in this case a putative employer, but is, instead, to protect the legal interests of the contracting parties and to compensate the nonbreaching party who has reasonably and foreseeably relied on the contract and suffered harm from the breach. In this instance, the facts indicate that plaintiff may have suffered harm as a result of defendants' breach of contract.

In sum, I would hold that a prospective employee who, in fulfillment of a unilateral contract offer, reasonably relies on an employer's separate promise to hire the employee is not barred from seeking relief simply because the ultimate employment would be at will. The trial court erred in granting summary judgment to defendants. Because I would resolve the issue under a breach of contract theory, I decline to address plaintiff's promissory estoppel theory.

For the above reasons, I dissent.

---

[1] The majority argues that this statement is not on point because the language appears in connection with the plaintiff's fraud claim and the plaintiff's breach of contract argument was rejected by the court. However, the majority fails to explain why reliance on a promise of at will employment is not *per se* unreasonable for purposes of fraud, but would be *per se* unreasonable for purposes of a unilateral contract for employment.