Argued and submitted June 5, affirmed November 12, 2008

Harold (Gene) RUSHING,
*Plaintiff-Appellant,*

*v.*

SAIF CORPORATION,
an Oregon public benefit corporation,
and Yvette Baker,
an individual,
*Defendants-Respondents,*

*and*

Judi JANZEN
and David Jordan,
*Defendants.*

Clackamas County Circuit Court
CV05070838; A134652

196 P3d 115

Eric J. Fjelstad argued the cause for appellant. With him on the briefs was Smith & Fjelstad.

Karla H. Alderman, Assistant Attorney General, argued the cause for respondents. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiff initiated this action against SAIF Corporation[1] for breach of contract and denial of due process under 42 USC section 1983, arising out of SAIF's rescission of an offer of employment. The parties filed cross-motions for summary judgment; plaintiff argued that he had a constitutionally protected expectation of employment, while SAIF argued that it is an at-will employer that may withdraw employment offers at any time. The trial court agreed with SAIF and entered judgment dismissing the claims. Plaintiff appeals, and we affirm.

The relevant facts are undisputed. For 27 years, plaintiff worked for the State of Oregon in a variety of different positions and for a variety of different agencies. Most recently, he worked for the Department of Environmental Quality (DEQ) in Portland. In November 2004, he applied for a position with SAIF.

On January 5, 2005, a SAIF employee called plaintiff and offered him a job as a loss control consultant at SAIF's southern regional office in Roseburg. Plaintiff called back five days later and accepted the offer. Plaintiff and SAIF agreed on a starting date of March 1, 2005. On January 12, 2005, SAIF sent plaintiff a letter confirming the job offer, setting forth plaintiff's salary, and confirming the starting date of March 1. The letter also stated:

> "You will be considered a trial service employee for the first 180 calendar days of your new assignment. Your continued employment will be contingent upon a favorable performance review at the conclusion of the trial service period. Thereafter your performance will be evaluated informally on an ongoing basis, and once per year you will receive a formal performance review. Continued employment is dependent on meeting the performance expectations of your job."

The letter also enclosed an "Employee Relocation Memorandum of Agreement." SAIF asked plaintiff to complete the agreement, sign it, and return it "at your earliest convenience."

---

[1] Plaintiffs' complaint also named as defendants Janzen, Jordan, and Baker, who were employees of SAIF. Only Baker is a respondent on appeal. For convenience, we refer to both respondents as "SAIF."

On February 1, 2005, the supervisor of SAIF's Roseburg office sent plaintiff an e-mail inquiring about his status, plaintiff not having returned the executed relocation agreement. On February 11, the supervisor called plaintiff, and plaintiff advised him that he was preparing the appropriate paperwork.

On February 24, 2005, plaintiff resigned from his position at DEQ. On the same day as his resignation, plaintiff received from SAIF a letter notifying him that it was withdrawing its offer of employment. The letter stated that the offer was being withdrawn because of plaintiff's failure to keep SAIF informed about his status and intentions with respect to the starting date. Plaintiff then filed his complaint in this proceeding, as we have noted, seeking damages for breach of contract and denial of his right to due process under section 1983.

The parties filed cross-motions for summary judgment. They agreed that there are no disputed issues of fact and sought a determination of the legal issue that they agree is central to plaintiff's claims—whether SAIF's offer to plaintiff was for at-will employment. In plaintiff's view, his long tenure as a permanent employee with the state—most recently with DEQ—essentially followed him to SAIF, creating a protected property interest in his continued employment that could not be withdrawn without due process. Central to plaintiff's contention is his assumption that SAIF is a part of state government and that his "transfer" of employment to SAIF was simply a continuation of his state service. He also contended that SAIF's offer was for a specific duration of at least 180 days and, further, that SAIF's own internal policies show that plaintiff's employment with SAIF was not to be at-will.

SAIF contended that, under ORS 656.753, it is not subject to state personnel statutes or rules. Consequently, SAIF argued, any seniority rights that plaintiff might have acquired by virtue of his work for the state were lost when he voluntarily resigned from his state job to work for SAIF. SAIF asserted that the offer it made to plaintiff and its own personnel policies make clear that plaintiff was to begin his work at SAIF as a trial service employee for 180 days, during

which time it could terminate plaintiff's employment without cause.

The trial court denied plaintiff's motion and granted SAIF's motion for summary judgment. The court explained that, based on the undisputed facts, "plaintiff's job at SAIF was at will and, therefore, SAIF could withdraw the job offer."

On appeal, plaintiff argues that the trial court erred in granting SAIF's motion for summary judgment and denying his motion. In support of his argument on appeal, he renews essentially the same arguments concerning the source of his expectation of employment with SAIF that he advanced to the trial court. As we have noted, there are no disputed facts and the issues are exclusively legal. Accordingly, we review the trial court's entry of summary judgment for SAIF to determine whether the record establishes that SAIF was entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

■ The rule in Oregon is that, unless otherwise specified by agreement or statute, employment is "at-will" and terminable by either party. *Washburn v. Columbia Forest Products, Inc.*, 340 Or 469, 475, 134 P3d 161 (2006); *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 620, 733 P2d 430 (1987); *Maddox v. Clac. Co. Sch. Dist. No. 25*, 293 Or 27, 31, 643 P2d 1253 (1982). At-will employment may be terminated for any reason, or for no reason at all, and at any time—even, as here, before the job has begun. *Slate v. Saxon, Marquoit, Bertoni & Todd*, 166 Or App 1, 6, 999 P2d 1152, *rev den*, 330 Or 375 (2000).

■ State personnel statutes provide that, after a successful period of trial service, state employees "who have acquired regular status will not be subject to separation except for cause * * * or lack of work, curtailment of funds, or reorganization requiring a reduction in force." ORS 240.316(2). Employees subject to that statute, in other words, are not at-will employees. SAIF, however, is exempt from that statute. ORS 656.753(1) expressly provides that the provisions of ORS chapter 240, among a number of others,

"do not apply to the State Accident Insurance Fund Corporation."

Plaintiff acknowledges that SAIF is not subject to the state's personnel rules; those are not the sources of his contention that he was not hired on an at-will basis. In plaintiff's view, there are three independent bases for his contention that he was not hired on an at-will basis: (1) SAIF's offer of employment demonstrated an expectation that plaintiff would be a long-term employee of SAIF; (2) SAIF's internal policies show that plaintiff was entitled to "regular employee" status; and (3) by virtue of his 27 years in state service plaintiff had a legitimate expectation of continued employment by the same governmental employer, in this case, the State of Oregon, of which, he contends, SAIF is a component part. We consider each argument, in turn.

■ Plaintiff's first contention is that SAIF's offer of employment manifested an intention to create a long-term employment position. In particular, plaintiff relies on SAIF's January 12, 2005, letter confirming its job offer and stating, "You will be considered a trial service employee for the first 180 calendar days of your new assignment," followed by a performance review. In plaintiff's view, that can only mean that he was guaranteed 180 days of employment as a trial service employee. That is simply not what the letter says, however. Nothing in the quoted portion suggested that the period of trial service was itself one of guaranteed employment. It simply stated that, during plaintiff's first 180 days of employment, he would be considered a trial service employee.

■ Plaintiff's second contention is that certain internal SAIF documents show that SAIF regarded him as a "regular" employee who was not subject to termination on an at-will basis. Plaintiff relies on two documents, in particular, SAIF's "Corporate Standards Manual" and its "Manager's Loss Control Guide."

The Corporate Standards Manual, he argues, makes clear that SAIF distinguishes between "trial" and "regular" service employees. The former may be terminated at-will, while the latter may be terminated only after notice and a hearing. According to plaintiff, because SAIF said nothing to

him about being a trial service employee, it necessarily follows that he was hired as a regular service employee who was not terminable at-will.

Even a cursory examination of the manual, however, demonstrates that there is no basis for plaintiff's contention. The document does indeed distinguish between trial service and regular service employees. A "trial service" employee is one who "[m]ay resign or may be terminated with or without cause at any time during, or at the end of, the trial service period." A "regular" service employee is "one who has satisfied the initial trial service period for his or her first job assignment *with SAIF Corporation.*" (Emphasis added.) Thus, on the face of the document, it is clear that, in order to become a regular service employee, a worker must complete a period of trial service *with SAIF.* The document does not mention the possibility of any worker initially being hired as a regular service employee.

The Manager's Loss Control Guide, plaintiff argues, makes clear that SAIF instructs its managers to be certain to advise prospective employees whether they are being hired on an at-will basis and to "[c]arefully word the job offer to make sure you have not created a contract for life-time work." According to plaintiff, the fact that SAIF did not do that in this case, demonstrates that it intended to offer him a permanent position.

The Manager's Loss Control Guide, however, provides even less support for plaintiff's contentions on appeal than does the Corporate Standards Manual. On its face, the guide is not even an internal SAIF management document. Instead, it is a document distributed to SAIF's *insureds* to assist them in controlling losses in the operation of their businesses. The document explains that it provides "a brief outline of generally sound hiring practices and practical suggestions. Use this information to help you face issues that generally arise during recruiting, interviewing and other elements of the hiring process." The document warns that it is not intended as a substitute for legal advice. Nothing in the document remotely suggests that it governs the conduct of SAIF's own management activities.

■ Plaintiff's third contention is that, as a public employee with some 27 years of service to the State of Oregon, he has acquired a property interest in his continued employment with the state that should follow him to any new position with the state and that cannot be taken away without due process. Specifically, plaintiff contends that his status as a regular employee with DEQ was a constitutionally protected property interest that he did not lose when he accepted the job with SAIF and that he therefore could not be terminated without due process.

In support of that contention, plaintiff cites the Ninth Circuit's decision in *McGraw v. City of Huntington Beach*, 882 F2d 384 (9th Cir 1989). In that case, an employee of the City of Huntington Beach who had attained permanent employee status, along with its associated seniority and due process rights, voluntarily took a position in a different city department. In her new job, she was subject to a "promotional probationary period" and was summarily terminated before that probationary period ended. *Id.* at 386-87. The plaintiff sought damages from the city under section 1983 for the deprivation of her property right to continued public employment. *Id.* at 387. The Ninth Circuit held that, having once attained permanent employee status with the city, the plaintiff had a constitutionally protected property interest in her continued employment and could not be summarily terminated. *Id.* at 392. Plaintiff asserts that his situation is analogous—that plaintiff's move from DEQ to SAIF was a "transfer" within state government and that his regular employee status with the state was a protected property interest that followed him to SAIF and could not be taken away without due process.

There are several reasons why we conclude that *McGraw* is not analogous or helpful to plaintiff. To begin with, in *McGraw*, the court did not hold, as plaintiff contends in this case, that the plaintiff had the right to retain the position from which she had been terminated. Rather, the court said that the plaintiff had a property interest in her *former position* as a permanent employee with the city. 882 F2d at 392. Plaintiff in this case does not assert a right to his former position—from which he voluntarily resigned. Rather, he asserts that the regular employee status that he attained in

his former position gave rise to a property interest in the position offered to him by SAIF. *McGraw* says nothing about that situation.

Moreover, as the court emphasized in *McGraw*, and as other federal decisions have made clear, *see, e.g., Board of Regents v. Roth*, 408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972), whether or not a person has a protected interest in continued public employment is dependent on "existing rules or understandings that stem from an independent source such as state law," *id.* at 577. In *McGraw*, the court said that the plaintiff had a property interest in her position with the city by virtue of the city's personnel rules, which provided for no dismissal of a permanent employee without cause. The personnel rules of the City of Huntington Beach are very different from SAIF's personnel policies. As previously noted, the record on summary judgment shows that plaintiff was hired by SAIF as an at-will trial service employee. It does not appear that SAIF's personnel policies create any right to continued employment that might be viewed as a property interest.

Finally, in light of several decisions of this court and the Oregon Supreme Court, we think that plaintiff's assumption that, as in *McGraw*, his employment with SAIF was a continuation of his employment with the same public entity—that is, the State of Oregon—is dubious. *See, e.g., Johnson v. SAIF*, 343 Or 139, 156, 164 P3d 278 (2007) (SAIF, although a state instrumentality, is not *the state* for purposes of immunity under the Eleventh Amendment to the United States Constitution). Nonetheless, even if, as in *McGraw*, plaintiff's employment with SAIF was a continuation of his state employment, we would conclude that the state's personnel statutes and rules, which do provide certain procedural protections for regular employees, *see, e.g.*, ORS 240.316(2) ("Employees who have acquired regular status will not be subject to separation except for cause as defined by ORS 240.555 or lack of work, curtailment of funds, or reorganization requiring a reduction in force."), do not apply here, in light of the legislature's explicit exemption of SAIF from the state's personnel laws, ORS 656.753(1). Thus, any property interest that might have belonged to plaintiff by virtue of the state personnel statutes did not follow him to SAIF.

For the foregoing reasons, we conclude that the trial court did not err in rejecting plaintiff's claims and in granting SAIF's motion for summary judgment.

Affirmed.