Argued and submitted December 10, 2009, reversed and remanded
December 8, 2010

## John BASTASCH,
*Plaintiff-Respondent,*

*v.*

## Rebecca HANSEN
and Jeff Hansen,
*Defendants-Appellants.*

Clackamas County Circuit Court
CV07050400; A139092

246 P3d 10

Henry C. Breithaupt, Judge pro tempore.

Jonathan M. Radmacher argued the cause for appellants. With him on the briefs was McEwen Gisvold LLP.

Melinda B. Wilde argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Defendants appeal the trial court's grant of summary judgment to plaintiff for specific performance of a loan agreement and option to purchase defendants' real property. Defendants argue that the agreement is unenforceable—and, therefore, summary judgment was improper—because it violates Oregon's usury laws, is unconscionable, and constitutes an unlawful penalty for breach of contract. As explained below, we conclude that the trial court erred in determining that the loan agreement was exempt from the relevant usury statutes;[1] we further conclude that, if usurious, the option agreement is unenforceable as a consequence of that. Accordingly, we reverse and remand the trial court's grant of summary judgment for plaintiff.

On appeal of a grant of summary judgment, we review the record in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

Defendants, who are brother and sister, inherited real property located in Clackamas County from their father, although, apparently, the property was never probated and the record of title continued to show the father as owner. In 2005, the county foreclosed a tax lien on the property for non-payment of property taxes. *See* ORS 312.010 - 312.100. The two-year period for defendants to redeem the property by paying the back taxes, plus interest, penalties, and fees, *see* ORS 312.120, was set to expire on September 30, 2005, at 5:00 p.m. On September 29—the day before the redemption period ran—defendants and plaintiff executed a "Loan Agreement and Option to Purchase Real Property" (capitalization altered), whereby plaintiff agreed to lend defendants the amount necessary to redeem the property from the county. As pertinent here, the agreement provided:

"7.   The Lender will loan the Borrower the amount of back taxes and interest necessary to redeem the property from the county before the redemption period expires. * * *

---

[1] Those statutes are set out below, 239 Or App at 329-30.

"8. The Borrowers agree to pay the Lender the amount of the loan, plus interest of 12%, plus 5 points, eight (8) months from the date of this agreement. * * *

"9. If the Borrowers fail to repay the loan (including interest and points) within 8 months from the date of this agreement, then the Borrower [*sic*, Lender] shall have the option to purchase the aforementioned property for the sum of $60,000 less the amount outstanding on the loan (including interest and points), and less any expenses incurred by the Lender in enforcing this agreement including attorneys fees."[2]

The exact amount of the loan was to be determined when the property was redeemed; on appeal, the parties agree that the loan amount is $9,251.73. The agreement was recorded with the Clackamas County Recorder on December 22, 2005.

Defendants did not repay the loan within the eight-month period. On June 20, 2006, and again on March 13, 2007, plaintiff notified defendants that he was exercising his option under the agreement to purchase the property. Defendants did not respond and did not vacate the property. On May 17, 2007, plaintiff filed the present action for specific performance of the agreement or, alternatively, breach of contract or *quantum meruit.* Defendants answered and asserted a variety of affirmative defenses, including usury, unenforceable penalty, and unconscionability.[3]

Both parties filed motions for summary judgment. Defendants asserted that the loan agreement was usurious in violation of ORS 82.010(3)(b) and that they, therefore,

---

[2] Other provisions of the agreement required defendants to take the necessary steps—after the property was redeemed from the county—to record transfer of title from the father's name to their own names, the cost of which was to be borne by plaintiff and either added to the loan amount or, if plaintiff exercised his option to purchase, deducted from the sale price of the property. The agreement required plaintiff to exercise his option to purchase within 30 days of default by defendants; defendants agreed to vacate the property within 30 days after notification of that exercise and to pay rent of $600 per month from the date of default until the property was vacated. Defendants also agreed that any damage to the property at the time the option was exercised would be deducted from the option price of the property. Finally, the agreement provided that, in the event of legal proceedings, the prevailing party was entitled to recover litigation expenses, including attorney fees.

[3] Plaintiff initially obtained a default judgment against defendants. That judgment was later set aside.

were entitled to judgment as a matter of law against plaintiff's claims, as well as a declaration that they are required to pay only the loan principal. Plaintiff, for his part, asserted that he was entitled to summary judgment for specific performance because the agreement was definite in its purpose, intent, and terms and defendants' defenses did not preclude summary judgment. Specifically, plaintiff argued that the loan was exempt from application of ORS 82.010(3)(b) under ORS 82.025(3), that there was no legal authority supporting defendants' penalty defense, and that the agreement was not unconscionable because the amount offered by plaintiff to purchase the property was reasonable under the circumstances.

After hearing argument on the parties' cross-motions, the trial court denied defendants' motion and granted plaintiff's, rejecting defendants' affirmative defenses. The court subsequently entered judgment for plaintiff, enforcing the terms of the agreement. On appeal, defendants assign error to the trial court's grant of summary judgment to plaintiff, arguing that the loan agreement is unenforceable as usurious under ORS 82.010(3)(b), or, at the least, that there are disputed issues of fact surrounding that issue, and that questions of fact exist as to whether the loan is void as unconscionable or as an unlawful penalty. They do not assign error to the trial court's denial of their motion for summary judgment.

As noted, we conclude that defendants' usury defense precludes summary judgment for plaintiff; thus, we do not address defendants' other arguments. We begin our analysis with the governing statutes. ORS 82.010 provides, in part:

"(3)  Except as provided in ORS 82.025, no person shall:

"* * * * *

"(b)  Make a loan of $50,000 or less * * * at an annual rate of interest exceeding the greater of 12 percent, or five percent in excess of the discount rate on 90-day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve district where the person making the loan is

located, on the date the loan or the initial advance of funds under the loan is made.

> "(4)    Any person who violates subsection (3) of this section shall forfeit the right to collect or receive any interest upon any loan for which a greater rate of interest or consideration than is permitted by subsection (3) of this section has been charged, contracted for or received. The borrower upon such loan shall be required to repay only the principal amount borrowed."

ORS 82.020(1) further provides that "any commission, bonus, fee, premium, penalty or other charge, compensation or gratuity, whether in money, credit or other thing of value," paid by the borrower to the lender "as a consideration, compensation or inducement for obtaining" a loan to which ORS 82.010 applies "shall be deemed a part of the interest charged" on the loan. However, certain charges, such as "[t]he cost of the preparation, execution and recording of any papers necessary in consummating such loan" are not considered part of the interest charged. ORS 82.020(3)(c). Finally, and significantly, ORS 82.025 provides exemptions from application of those statutes under specified circumstances.[4] As relevant here, it states:

> "ORS 82.010(3) and (4) and 82.020 do not apply to:
>
> "* * * * *
>
> "(3)    Any loan secured by a first lien on real property or made to finance the acquisition of real property and secured by any lien on that property."

The trial court concluded that the loan was exempt from ORS 82.010(3)(b) under ORS 82.025(3), reasoning as follows:

> "The usury defense is not available to Defendants if the loan in question is described in ORS 82.025(3), one of the provisions of which is that a loan is exempt if it is 'made to finance the acquisition of real property and secured by any lien on that property.' Because the property in question had been foreclosed by the county, the property had been sold to

---

[4] The legislature made technical amendments to ORS 82.025 in 2007. *See* Or Laws 2007, ch 71, § 17. Those amendments do not affect our analysis in this case; thus, we refer to the current version of the statute in this opinion.

the county subject to the right of redemption of the prior owner. ORS 312.100. The language of ORS 312.120(3) in stating a rule that property redeemed is subject to taxation for the redemption period, 'as though it had continued in private ownership' indicates that the property did not remain in private ownership during the redemption period. Accordingly, the loan made by Plaintiff was to finance the acquisition of the real property. In situations where a loan is made to permit a property to be redeemed, an equitable lien arises in favor of the party making the loan. *Lund v. Lund,* 152 Or 377, 51 P2d 1031 (1936). ORS 82.025(3) makes reference to 'any lien' in describing certain loans that are exempt from the usury statute. It follows that this loan was one made to finance the acquisition of property and it was secured by some lien on the property. The usury defense fails."

Defendants contend that the trial court erred in concluding that the agreement was exempt under ORS 82.025(3), because the loan is not secured by a lien on real property; they further contend that, until the redemption period ended and the property was deeded to the county, the county did not own the property—thus, the loan was not made to finance the *acquisition* of the property. They also argue that there is a disputed issue of fact regarding whether, as stated in the agreement, the interest rate set forth in the agreement violates the statute,[5] but that, in any event, the charging of an additional "5 points" constitutes a fee "deemed a part of the interest charged" on the loan under ORS 82.020(1), and, therefore, the interest exceeds the maximum 12 percent interest rate allowed under ORS 82.010(3)(b).

Plaintiff responds that the trial court correctly concluded that an equitable lien secured by the real property was created in plaintiff's favor when he loaned defendants money for purposes of redeeming the property from the county. He also asserts that the county became the owner of the property upon foreclosure, subject to defendants' right to buy it back, and, therefore, the loan was made for the purpose

---

[5] Defendants argue that, because the agreement does not specify that the 12 percent rate is an *annual* interest rate, and the loan period was only eight months, a trier of fact could find that the agreement effectively imposed an 18 percent interest rate.

of acquiring the property. Alternatively, plaintiff argues that he is entitled to summary judgment for specific performance in any event, because, under ORS 82.010(4), violation of ORS 82.010(3)(b) results in forfeiture of the interest, not invalidation of the agreement.

The threshold issue presented by the parties' arguments, therefore, is whether the trial court correctly concluded that the agreement is exempt from ORS 82.010(3)(b) under ORS 82.025(3), a question of law.

ORS 82.025(3) sets forth, in the disjunctive, two types of loans that are exempt from the usury provisions of ORS 82.010(3) and (4). The first is any loan "secured by a first lien on real property"; the second, any loan "made to finance the acquisition of real property and secured by any lien on that property." ORS 82.025(3). Thus, in order for either exception to apply, the loan must—at the least—be *secured by a lien* on real property.

We agree with defendants that that prerequisite was not satisfied in this case. Although the agreement was recorded, nothing in the agreement purports to grant plaintiff an interest in the property as security for repayment of the loan. Instead, the agreement gives plaintiff—at his discretion—an affirmative opportunity to *purchase* defendants' property, at an agreed-upon price, if the loan is not repaid within the required period. In other words, the text of the agreement does not in any way pledge a conveyance of an interest in the land as security for the debt. *See Potter v. Schlesser Co., Inc.*, 335 Or 209, 213, 63 P3d 1172 (2003) ("According to its dictionary definition, a 'lien' denotes a 'charge upon real or personal property for the satisfaction of some debt or duty ordinarily arising by operation of law' or 'a right in one to control or to hold and retain or enforce a charge against the property of another until some claim of the former is paid or satisfied[.]' " (quoting *Webster's Third New Int'l Dictionary* 1306 (unabridged ed 1993) (alteration in *Potter*))); *cf. Western States Finance Co. v. Ruff*, 108 Or 442, 215 P 501, *on reh'g*, 216 P 1020 (1923) (contract language requiring the satisfaction of a debt prior to conveyance of the promisor's interest in the property, where nothing in the contract disclosed the promisor's intent to make his estate in the

lands security for his debt and obligation, did not create an equitable lien on the property). Here, nothing about the option agreement indicates an intention to convey to plaintiff a present interest in the property as security for defendants' debt.

Plaintiff maintains, however, that an equitable lien secured by the property arose when plaintiff loaned money to defendants for the purpose of redeeming the property from the county due to tax foreclosure. Relying on *Lund v. Lund*, 152 Or 377, 385, 51 P2d 1031 (1936), he argues:

> "[I]f the plaintiff had not loaned the redemption money to the defendants when he did, the defendants would have lost all interest they had in the real property to the county on the following day. ORS 275.275, ORS 312.120. An equitable lien arose in favor of the plaintiff for repayment of his loan when the Loan Agreement was signed and consideration paid just as a lien arose in favor of the lender in the *Lund* case. [*Lund*, 152 Or at 385]."

We disagree. *Lund* does not stand for the broad proposition for which plaintiff's argument depends—that an equitable lien is automatically created whenever the borrowers stand to lose their property in the absence of the loan. In *Lund*, the plaintiff and her husband (the defendant Lund), had advanced funds toward the purchase, by the plaintiff's father (Bates), of an alleged gold mine; as security for repayment of the money, the plaintiff and the defendant Lund were named as grantees in the deed of conveyance. 152 Or at 378. Other transactions involving the property occurred subsequently; we need not describe those transactions here, except to say that, at some point, the property was sold in a lien foreclosure proceeding. *Id.* at 379. The defendant Lund then contracted with the defendant Robertson for the funds necessary to redeem the property, and, acting through his attorney, the defendant Lund succeeded in redeeming the property. *Id.* at 380.

At issue on appeal, among other things, was whether the defendant Lund had the right to redeem and acquire title adverse to the plaintiff and to Bates and his wife (the Bates defendants). *Id.* at 382. The Supreme Court determined that

the deed of conveyance, because it was executed to the plaintiff and the defendant Lund as security for their loan of the purchase price to the Bates defendants, was actually a mortgage, with the plaintiff and the defendant Lund as co-mortgagees and the Bates defendants as mortgagors. By virtue of the mortgage, the court held that the defendant Lund and the plaintiff held the legal title to the property in trust for the Bates defendants. *Id*. at 384. By instead asserting absolute ownership of the property under the deed, the court found that the defendant Lund intended "to wrongfully deprive his wife of her interests as co-mortgagee and to violate his trust relationship with [the Bates defendants]." *Id*. at 382. That relationship, the court held, "preclude[d] [the defendant Lund] from acquiring an outstanding title to the prejudice of the beneficiaries under the trust." *Id*. at 384.

Under those circumstances, as to the defendant Robertson's interest in the property, the court concluded that

"[i]t was in keeping with equity that Robertson should be reimbursed for the money advanced to Lund for the purpose of redemption. Otherwise, plaintiff and the defendant mortgagors might have been deprived of any interest in the property."

*Id*. at 385.

In other words, in the specific and peculiar circumstances of the case—particularly, as the above discussion demonstrates, the fact that the defendant Robertson's loan to the defendant Lund had effectively prevented the plaintiff and the defendant mortgagors from losing their interest in the property—equity demanded that the court step in to prevent unjust enrichment of the plaintiff and the Bates defendants at Robertson's expense. The circumstances of the present case are not in any way analogous.

Plaintiff also reasons that his loan created an equitable lien because,

"[i]f the defendants had decided to sell the property in the ensuing eight months, there is no question that the plaintiff had a lien entitling him to be reimbursed for the amount of his loan plus interest from the proceeds of a sale. Equity

would require such a result just as it did in the *Lund* case. [*Lund*, 152 Or at 385]."

Plaintiff is incorrect. The sale of the property in the intervening eight months would not have resulted in the creation of a lien in plaintiff's favor against the sale proceeds. Nor would equity require such a result, as it did in the *Lund* case. Of course, as a practical matter, any prudent buyer of the property—knowing of the option—would insist that the debt be satisfied as part of the sales transaction in order to prevent the later exercise of the option from divesting the buyer of the property. But it is that practicality, not the existence of a lien—equitable or otherwise—that would enable plaintiff to obtain reimbursement of the loan at that time. *See* 11 *Thompson on Real Property, Second Thomas Edition* § 96.05(b), 588-89 (David A. Thomas, ed., 2002) ("The option contract conveys no title, legal or equitable, to the property; it only confers the right to specific performance." (Footnotes omitted.)).

Quoting *Bosler v. Short*, 277 Or 697, 700, 561 P2d 1025 (1977), plaintiff nevertheless contends, " 'Where there is an agreement that property is to be sold and the proceeds are to be used to pay a debt out of the sale money, an equitable lien will attach to the property before the sale.' " We understand plaintiff to be arguing that that principle entitles him to an equitable lien because the parties here agreed that any outstanding amount remaining on the debt at the end of the loan period was to be deducted from the option's sale price. What plaintiff fails to account for, however, is that that circumstance arises only *if* the option is eventually exercised. Thus, it is the (unquoted) remainder of the court's statement in *Bosler* that is telling here: "However, if there is no such agreement and the promissor agrees only to pay the debt out of the sale of the property *if* the property is sold, an equitable lien is not created, either in the land or in the proceeds of the sale." *Id.* (emphasis added; footnote omitted).

In sum, we conclude that plaintiff's loan was not secured by a lien on defendant's real property, and, therefore,

the trial court erred in concluding that the agreement is exempt from the relevant usury statutes. We thus turn to plaintiff's alternate argument that, even if the usury provisions of ORS 82.010(3) apply, and even if the agreement violates the statute,[6] he is, nonetheless, entitled to summary judgment for specific performance of the option agreement as a matter of law, because the remedy for violation of the statute is forfeiture of the interest otherwise due on the loan, not unenforceability of the option.

At first blush, plaintiff's argument has some appeal. ORS 82.010(4) plainly states that

> "[a]ny person who violates subsection (3) of this section shall forfeit the right to collect or receive any interest upon any loan for which a greater rate of interest or consideration than is permitted by subsection (3) of this section has been charged, contracted for or received. The borrower upon such loan shall be required to repay only the principle amount borrowed."

Thus, plaintiff is correct that a violation of ORS 82.010(3)(b) results in forfeiture of the right to collect or receive any interest on the loan and, further, that the statute does not suggest that the loan agreement itself becomes unenforceable as a result. It does not follow from that, however, that, as plaintiff contends, he is therefore entitled to summary judgment for specific performance of the option agreement.

Where plaintiff's logic fails is that, under the agreement, the option becomes operational only upon defendants' default in "repay[ing] the loan (including interest and points)" as set forth in the agreement. Because, under ORS 82.010(4), defendants cannot legally be required to pay interest if the loan violates ORS 82.010(3), it follows that the condition necessary to trigger the option cannot be satisfied. In other words, because the agreement imposes a payment requirement—in order to avoid operation of the option—that is invalid under ORS 82.010(4), the option itself cannot be exercised. Thus, plaintiff's alternate argument—that he was entitled to summary judgment for specific performance of the

---

[6] Because defendants did not assign error to the trial court's denial of their motion for summary judgment, we do not address the question whether the agreement violates the usury statute.

agreement even if the agreement violates the usury statute—also fails.[7]

Reversed and remanded.

---

[7] Given our conclusion, based on defendants' usury defense, that plaintiff was not entitled to summary judgment, we need not and do not address other issues presented on summary judgment below, including defendants' other defenses.