Argued and submitted September 21, affirmed December 29, 2011, petition for review allowed June 14, 2012 (352 Or 107)

Michael COCCHIARA,
*Plaintiff-Appellant,*

*v.*

LITHIA MOTORS, INC.;
and Lithia Motors Support Services, Inc.,
*Defendants-Respondents,*

*and*

LITHIA DM, INC.,
dba Lithia Chrysler Jeep Dodge,
*Defendant.*

Jackson County Circuit Court
062731L7; A146452

270 P3d 350

G. Jefferson Campbell, Jr., argued the cause for appellant. With him on the briefs was G. Jefferson Campbell, Jr., P.C.

Ryan J. Vanderhoof argued the cause for respondents. With him on the brief was Hornecker, Cowling, Hassen & Heysell, L.L.P.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

Plaintiff, who used to work for defendants as a car salesman, alleges that he sought less-stressful employment after he suffered a heart attack. Plaintiff asserts that defendants promised to give him a "corporate" position that would accommodate his needs and further claims that, in reliance on that promise, he turned down a job with a different employer. This litigation followed defendants' later decision not to hire plaintiff for the corporate job. Plaintiff's amended complaint included claims for fraudulent misrepresentation, promissory estoppel, and violation of ORS 659A.112, which prohibits employment discrimination on the basis of disability. The trial court granted defendants' motion for summary judgment on the first two claims, plaintiff voluntarily dismissed the statutory claim without prejudice, and this appeal followed. Because we agree that defendants were entitled to summary judgment on the promissory estoppel and fraudulent misrepresentation claims, we affirm.[1]

We state the facts in the light most favorable to plaintiff, the nonmoving party. *See Bastasch v. Hansen,* 239 Or App 325, 327, 246 P3d 10 (2010) ("On appeal of a grant of summary judgment, we review the record in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law."). Plaintiff asserts in his declaration that he told defendants that he needed less stressful employment and had accepted a job with a different employer, the *Medford Mail Tribune.* According to plaintiff, defendants then made the following representations to him: that plaintiff was "too valuable" to defendants and should reject the *Medford Mail Tribune* job; that defendants would give plaintiff a new "corporate" purchasing job that they believed would meet plaintiff's needs and "accommodate [his] health disability"; and that he should come in the next day to finalize paperwork for that new job, as a "mere formality." In reliance on those assertions, plaintiff

---

[1] For ease of reading, we use the term "defendants" in this opinion to refer interchangeably to the two defendant-respondents, Lithia Motors, Inc., and Lithia Motors Support Services, Inc., and to those defendants' individual agents, even though the individual agents are not themselves named defendants.

withdrew his acceptance of the job offer from the *Medford Mail Tribune*. When plaintiff went to defendants' dealership the following day, however, he discovered that he "had not been hired for the job but was merely being interviewed for this new 'corporate' job." Plaintiff attempted to get the position that he previously had been offered at the *Medford Mail Tribune* but was unsuccessful, and he eventually ended up accepting employment that paid less than he would have been paid in the corporate job with defendants.

As noted, plaintiff sued defendants for fraudulent misrepresentation, promissory estoppel, and unlawfully discriminating against him on the basis of disability, in violation of ORS 659A.112. Plaintiff's demands for economic damages related solely to the wages that he claims he would have earned in the corporate job with defendants; he did not claim damages associated with wages that he might have earned at the *Medford Mail Tribune*. Defendants moved for summary judgment on the first two claims, arguing that this court's decision in *Slate v. Saxon, Marquoit, Bertoni & Todd*, 166 Or App 1, 999 P2d 1152, *rev den*, 330 Or 375 (2000), defeated those claims. According to defendants, because the corporate job would have given plaintiff only "at will" employment, plaintiff could not reasonably rely on defendants' alleged promise to give him that job. Defendants also argued that, in any event, plaintiff had no claim for damages associated with the alleged loss of the corporate job because defendants could have fired him from that position at any time, even if they had hired him into it. *Cf. Slate*, 166 Or App at 7 (where the plaintiff had been promised at-will employment, "there could have been no reasonable basis for reliance on and no substantial change of position that was attributable to the promise *per se*"). The trial court granted defendants' motion for summary judgment on the common-law claims and, after plaintiff voluntarily dismissed his statutory claim, the trial court entered a general judgment in defendants' favor.

On appeal, plaintiff first argues that the declaration he submitted at trial included averments sufficient to overcome defendants' summary judgment motion on his fraudulent-misrepresentation claim. Plaintiff emphasizes two assertions in that declaration: (1) that defendants repeatedly told him that he definitely had the corporate job

and, therefore, should not go to work at the *Medford Mail Tribune*; and (2) that, based on the context in which the statements occurred, he reasonably believed that defendants were offering him the corporate job "as an accommodation" for disability following his heart attack. Plaintiff argues that Oregon statutes prohibiting disability discrimination required defendants to give him the corporate job as an accommodation, and he contends that the job therefore could not—as a matter of law—have constituted employment at will. Accordingly, plaintiff concludes, he was entitled to rely on defendants' false representations that he definitely had the corporate job, and he could recover damages caused by that reliance. For similar reasons, plaintiff contends that the assertions in his declaration were sufficient to defeat defendants' motion for summary judgment on his promissory-estoppel claim.

In response, defendants assert that nothing in the record supports plaintiff's claim that the corporate job would constitute anything other than at-will employment. Consequently, they argue, this court's decision in *Slate* establishes that plaintiff could not reasonably rely on defendant's alleged promise of employment and could not recover any damages associated with defendants' failure to follow through on that alleged promise, on either a promissory-estoppel or a fraudulent-misrepresentation theory. With respect to plaintiff's argument that Oregon statutes required defendants to give plaintiff the corporate position as an "accommodation job," differentiating this case from *Slate*, defendants provide a two-fold response. First, defendants argue that "a job offered to a disabled employee, even an 'accommodation job,' is still employment at-will." Second, defendants argue that, even if they had a statutory obligation to accommodate plaintiff's disability, that obligation "is only related to the third [statutory] claim for relief, which is not the subject of this appeal." As explained below, we agree with defendants that *Slate* controls. Accordingly, we affirm.

Because our decision in *Slate* guides our resolution of this case, we discuss that opinion in some detail. The plaintiff in *Slate* had been a law clerk at the defendant law firm, which offered him a position as an associate attorney, conditioned on the plaintiff passing the Oregon bar examination

and on the defendants' renewal of some juvenile and indigent-defense contracts. 166 Or App at 3. Those conditions later were met, yet the "defendants advised plaintiff that they were terminating the planned employment arrangement, although plaintiff had not yet begun working for them." *Id.* The plaintiff sued for breach of contract and promissory estoppel, claiming damages associated with having taken the bar examination in Oregon, instead of in another jurisdiction, and with having not sought alternative employment. *Id.* at 5. The trial court granted summary judgment to the defendants, and we affirmed. *Id.* at 3.

Our holding in *Slate* turned on the at-will nature of the employment that the defendants had offered the plaintiff. We held that the plaintiff could not establish any breach of contract, as the defendants had promised him nothing other than employment that was terminable at will. We also held, for two reasons, that the trial court correctly had granted the defendants' motion for summary judgment on the plaintiff's promissory-estoppel claim. First, because the promised employment was at will, "there could have been no reasonable basis for reliance on" that promise. *Id.* at 7. In other words, the plaintiff could not *reasonably* have understood that the promised employment would last for any particular length of time. Second, any monetary losses that the plaintiff experienced were not "attributable to the promise [of employment] *per se.*" *Id.* That is, the plaintiff would have experienced the same losses if the defendants had hired him, but had "discharged [him] immediately after he came to work rather than before." *Id.* Because the plaintiff could not have recovered damages for being terminated from the at-will job, he also could not have recovered damages from not having been hired into that position. *Id.* at 7-8.

Here, too—momentarily leaving aside the disability-discrimination claim, which we address later in this opinion—there is no genuine dispute about the at-will nature of the promised employment. Defendants submitted evidence that the corporate job was an at-will position, and plaintiff has acknowledged that he and defendants engaged in "no discussion as to the job tenure status of the new corporate job." Consequently, plaintiff could not reasonably rely on defendants' statements as having promised anything other than at-will

employment, and he also could not recover damages associated with the loss of income from the corporate job, as defendants could have fired him from it at any time. Our reasoning in *Slate* applies with equal force here:

> "The necessary premise of plaintiff's argument is that he relied on and changed his position in response to the promise that he would be employed for at least an infinitesimal period of time, independently of the promised infinitesimal period of employment itself. Plaintiff alleges that he was damaged 'by foregoing other job search activities and refraining from registering for and taking the Massachusetts bar examination and accepting a practice opportunity in that state.' However, the same losses would have been incurred if plaintiff had been discharged immediately after he came to work rather than before. It is circular and not based on reality to argue, as he does, that either his reliance or his change in position was attributable to the promise of at will employment rather than the at will employment contract itself."

166 Or App at 7.

Plaintiff contends that *Slate* does not defeat his promissory-estoppel claim because, unlike the plaintiff in *Slate*, he turned down other employment to take the job that defendant allegedly had promised him. That distinction is immaterial. Plaintiff has not claimed damages from the alleged loss of employment with the *Medford Mail Tribune*. Rather, he claims damages associated only with not having been hired into the "corporate" position with defendants—a job from which defendants could have fired him at any time. Under *Slate*, plaintiff has no claim for damages associated with the loss of *that* promised job.

Plaintiff also contends that, even if *Slate* disposes of his promissory-estoppel claim, the trial court erred by relying on that decision as a basis for granting defendants summary judgment on his fraudulent-misrepresentation claim, as the latter type of claim was not at issue in *Slate*. We do not agree that *Slate*'s rationale is limited to promissory-estoppel claims.

To prevail on a claim for fraudulent misrepresentation, a plaintiff must prove, among other things, that he or

she justifiably relied on the defendant's false statements and that damage to the plaintiff resulted from that reliance. *See Knepper v. Brown*, 345 Or 320, 329-30, 195 P3d 383 (2008) (implicitly equating claim for "fraudulent misrepresentation" with a claim for intentional "fraud" and citing cases that describe the elements of those claims); *Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 405, 737 P2d 595 (1987) (cited in *Knepper*; listing elements of intentional "tort action in deceit"); *Webb v. Clark*, 274 Or 387, 391, 546 P2d 1078 (1976) (cited in *Knepper*; listing elements of "actionable fraud"). Thus, a fraudulent-misrepresentation claim, like one for promissory estoppel, requires proof both of reasonable reliance and of damages caused by the misrepresentation or promise.[2] *See Slate*, 166 Or App at 7 (discussing reliance and damages elements of promissory-estoppel claim).

Here, plaintiff claims damages associated only with not being hired for the promised corporate job, primarily the wages that he claims he would have earned in that position. But because defendants lawfully could have terminated plaintiff from that job at any time, under *Slate*, defendant's promise of employment cannot be said to have caused plaintiff any damages—at least, not any damages associated with the loss of that promised employment, which is what plaintiff claims in this case. For the same reason that defendants' promise to hire plaintiff into the corporate job cannot subject them to liability on a promissory-estoppel theory under *Slate*, defendants also cannot be liable for damages based on alleged misrepresentations that simply mirror the alleged promise, *i.e.,* statements that plaintiff definitely had the corporate job. Consequently, we disagree with plaintiff to the extent that he suggests that *Slate* has no bearing on the viability of claims for fraudulent misrepresentation. To the contrary, *Slate* defeats plaintiff's fraudulent-misrepresentation claim.

---

[2] Some of our cases discuss the justifiability of the plaintiff's reliance in terms of whether the plaintiff had "a right to rely" on the misrepresentation, rather than the "reasonableness" of that reliance. A careful reading of the cases makes clear, however, that we use those terms interchangeably when discussing claims for common-law fraud and fraudulent misrepresentation. *See, e.g., Knepper v. Brown*, 182 Or App 597, 605, 50 P3d 1209 (2002) (discussing, without differentiation in meaning, whether the plaintiff "justifiably" relied on a misrepresentation, whether a person generally has a "right to rely" on a certain kind of statement, and whether a person may "reasonably rely" on that type of representation).

Plaintiff also cites two federal cases, *Arboireau v. Adidas-Salomon AG*, 347 F3d 1158 (9th Cir 2003), and *Meade v. Cedarapids, Inc.*, 164 F3d 1218 (9th Cir 1999), for the proposition that defendants had a legal duty to inform him "that he did not definitely have the new corporate job and would be competing with other applicants for this job position." Those opinions do not assist plaintiff here, even though they are based on Oregon law. In each of those cases, the Ninth Circuit Court of Appeals concluded that a trial court erred in granting summary judgment to the defendant employer on the plaintiff's claim for fraudulent misrepresentation. *Arboireau*, 347 F3d at 1166-69; *Meade*, 164 F3d at 1222-23. Despite the fact that the promised employment in both cases was at will, the Ninth Circuit held that the plaintiff had come forward with sufficient evidence to support a claim of reasonable reliance on the alleged misrepresentations: in *Arboireau*, misrepresentations about the job's "locational stability" in Oregon, 347 F3d at 1166-67 (the defendants allegedly knew that the job likely would be moved to Germany); in *Meade*, representations that a Eugene facility was growing when, in fact, it was closing, 164 F3d at 1223.

Although plaintiff's reliance on those decisions is understandable, we find the holdings unhelpful for at least three reasons. First, the alleged misrepresentations in this case all related to the certainty of the job offer itself; that is, the statements related directly to whether plaintiff definitely was being promised employment. Under *Slate*, plaintiff could not reasonably form an expectation of employment, in reliance on that promise (or misrepresentation), because the undisputed evidence shows that the promised employment was at-will in nature.[3] In *Arboireau* and *Meade*, in contrast, the promises did not relate to the certainty of the job offers or of subsequent employment, but to the *conditions* of the promised employment—conditions that the plaintiffs reasonably could take into account in deciding whether to accept the offers.

Second, the Ninth Circuit did not discuss, either in *Arboireau* or in *Meade*, whether the plaintiffs could establish

---

[3] Again, we discuss plaintiff's allegation that he was promised the corporate position as an "accommodation job" later in this opinion.

*damages* caused by the alleged misrepresentations. *Slate* is based largely on the plaintiff's inability to prove that he suffered any damages from the defendants' breach of a promise to give him at-will employment. Our holding here similarly is based on our conclusion that plaintiff has not alleged any claim for damages that fairly can be said to spring from defendants' failure to give him the corporate job; as a matter of law, plaintiff could not prove any entitlement to lost wages from that job, as defendants could have fired him from it at any time. Because *Arboireau* and *Meade* do not discuss the damages element of a fraudulent-misrepresentation claim, they give us no reason to reverse the trial court's decision. ·

In any event, the Ninth Circuit's interpretations of Oregon law are not binding on this court. *Neff v. Jackson County*, 187 Or App 402, 411 n 11, 67 P3d 977 (2003). Moreover, we note that the Ninth Circuit did not address our decision in *Slate* when it issued *Arboireau*, even though *Slate* predated that opinion by about three years. We cannot discern, therefore, whether the court was aware of *Slate* when it decided *Arboireau*, or whether it would have reached the same decision even if it had taken *Slate* into account. For all of those reasons, neither *Arboireau* nor *Meade* persuades us that the trial court erred in granting defendants' motion for summary judgment on plaintiffs' fraudulent-misrepresentation claim.

Finally, plaintiff argues that the trial court should have denied defendant's summary judgment motion, with respect to both of plaintiff's common-law claims, because defendants had a *statutory* "obligation to provide the Plaintiff with an 'accommodation job' that he could adequately perform with his disability and [that] was available in the Defendants' operations." Plaintiff relies on various provisions of ORS chapter 659A for that proposition. Because defendants were legally obligated to give him the corporate position as an "accommodation job," plaintiff asserts, that job was no longer terminable "at will." Accordingly, plaintiff concludes, he reasonably could rely on defendants' alleged promise to give him that position.

Plaintiff acknowledges "the general rule * * * that an employer may discharge an employee at any time and for

any reason, absent a contractual, statutory, or constitutional requirement to the contrary." *Washburn v. Columbia Forest Products, Inc.*, 340 Or 469, 475, 134 P3d 161 (2006). And he cites no authority for his contention that, when an employer gives an employee a specific job to accommodate that employee's disability, the job cannot—as a matter of law—be terminable at will. Nor are we aware of any authority supporting that theory, either under ORS chapter 659, or under analogous provisions of the federal Americans with Disabilities Act (ADA).

We reject plaintiff's theory, however, not because we can find no case law supporting it, but because it has no foundation in the Oregon statutes that prohibit discrimination against persons with disabilities. Like the ADA, Oregon law generally prohibits employers from discriminating "on the basis of disability." ORS 659A.112(1). One prohibited form of discrimination is failing to reasonably accommodate the disabilities of qualified individuals:

"(2)   An employer violates subsection (1) of this section [prohibiting discrimination on the basis of disability] if the employer does any of the following:

"* * * * *

"(e)   The employer does not make reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability who is a job applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer."

ORS 659A.112. An employer may reasonably accommodate disabled employees in various ways, including through "reassignment to a vacant position." ORS 659A.118(1)(b).

Those statutes do not transform the at-will nature of a particular job, however, simply because a disabled individual is hired to fill that position. The requirement that an employer reasonably accommodate a qualified individual's disabilities does not mean that the employer cannot fire a disabled employee at any time, for any permissible reason or even for no reason. The statutes prohibit only disability *discrimination* and—as part of that prohibition—require

employers to take reasonable steps to employ qualified, disabled individuals through accommodation that does not "impose an undue hardship on the operation of the business of the employer." ORS 659A.112(2)(e). Thus, the statutes do not deprive employers of the right to terminate or take other actions against disabled employees, as long as the employers do not take those actions "on the basis of disability" or through refusal to reasonably accommodate the employees' disabilities.

In short, an at-will job remains an at-will job, even when a disabled individual holds it, and even when the individual has been given the job as an accommodation for his or her disabilities. That the individual is protected from disability discrimination—just like every other person employed by an Oregon employer that has more than six employees[4]—does not mean that the individual's employment is not terminable at will. Accordingly, *Slate* governs here: because defendants could have terminated plaintiff from the "corporate job" at any time, even if they had given him that position, plaintiff could not reasonably rely on any promise of employment in the job, and he has no claim for damages associated with not having been hired into it.

Lest we be misunderstood, we emphasize that nothing in this opinion should be read to express any view on whether plaintiff might be able to establish that defendants violated ORS 659A.112 by discriminating against him on the basis of disability, either by refusing to reasonably accommodate his disability or otherwise. That question relates only to plaintiff's third claim for relief, which he voluntarily dismissed, and which is not before us on appeal. Here, we hold only that a job does not automatically and necessarily lose its "at will" quality when an employer gives it to a disabled individual, even if the employer does so in an effort to accommodate that individual's disabilities. Because plaintiff's contrary contention is the sole disability-related reason that he contends this case is not governed by *Slate*, we agree with the

---

[4] "The requirements of ORS 659A.103 to 659A.145 apply only to employers who employ six or more persons." ORS 659A.106.

trial court that defendants were entitled to summary judgment on plaintiff's common-law claims for relief.

Affirmed.