282 March 7, 2013 No. 9

IN THE SUPREME COURT OF THE
STATE OF OREGON

Michael COCCHIARA,
*Petitioner on Review*,

*v.*

LITHIA MOTORS, INC.;
and Lithia Motors Support Services, Inc.,
*Respondents on Review*,

*and*

LITHIA DM, INC.,
dba Lithia Chrysler Jeep Dodge,
*Defendant*.

(CC 06-2731-L7; CA A146452; SC S060100)

En Banc

On review from the Court of Appeals.*

Argued and submitted November 8, 2012; resubmitted January 7, 2013.

G. Jefferson Campbell, Jr., Medford, argued the cause and filed the brief for petitioner on review.

Ryan J. Vanderhoof of Hornecker, Cowling, Hassen & Heysell, LLP, Medford, argued the cause and filed the brief for respondents on review. With him on the brief was Eric B. Mitton.

Shenoa L. Payne of Haglund, Kelley, Jones & Wilder, LLP, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

BALMER, C. J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

------

* Appeal from Jackson County Circuit Court, Ronald D. Grensky, Judge. 247 Or App 545, 270 P3d 350 (2011).

**BALMER, C. J.**

In this employment case we must determine whether a prospective employee may bring a promissory estoppel claim or a fraudulent misrepresentation claim based on an employer's representations regarding a job that is terminable at will. Plaintiff worked as a salesperson for defendant[1] for nearly eight years before he had a heart attack that required him to seek a less stressful job. In reliance on his manager's promise that plaintiff had been given a new "corporate" job with defendant that would meet his health needs, plaintiff turned down a job with a different employer. Ultimately, defendant did not hire plaintiff for the corporate job, and plaintiff subsequently had to take jobs that paid less than the corporate job with defendant or less than the position that he had turned down. Plaintiff brought this action against defendant claiming promissory estoppel, fraudulent misrepresentation, and unlawful employment practices, including employment discrimination. The trial court granted partial summary judgment for defendant—on the promissory estoppel and fraudulent misrepresentation claims—and plaintiff dismissed the unlawful employment practices claim without prejudice. The Court of Appeals affirmed, holding that, because the corporate job was terminable at will, plaintiff could not reasonably rely on the promise of employment or recover future lost wages. *Cocchiara v. Lithia Motors, Inc.*, 247 Or App 545, 270 P3d 350 (2011). For the reasons that follow, we reverse the decision of the Court of Appeals.

## FACTS

We state the facts in the light most favorable to plaintiff because the trial court granted defendant's motion for partial summary judgment. *Petock v. Asante*, 351 Or 408, 411 n 1, 268 P3d 579 (2011) (stating standard). Plaintiff worked as a salesperson at a Lithia Dodge dealership from 1997 to October 2005. Following a major heart attack in

---

[1] Plaintiff named his former employer, Lithia Motors Support Services, Inc., and its parent company, Lithia Motors, Inc., as defendants. For convenience, we refer to them collectively as defendant. Plaintiff noted in his amended complaint that he did not become an employee of Lithia Motors Support Services, Inc. until 2000, but it appears that, prior to that time, plaintiff was employed by another subsidiary of Lithia Motors, Inc.

2004, plaintiff's doctors recommended that he find a less stressful job that would allow him to work shorter hours and avoid working on the weekends. Plaintiff discussed those needs with Summers, his General Sales Manager at the dealership, but he also pursued other employment because his sales job could not meet his health needs.

Plaintiff received an offer to be a sales representative for the Medford Mail Tribune, a position that satisfied his health requirements. Plaintiff went to Summers to tell him that he planned to take the Medford Mail Tribune job, and he told Summers that that job would be less stressful and would provide compensation that was comparable to his current position. Summers responded that plaintiff should not accept the Medford Mail Tribune position because he was "too valuable" to defendant. Summers then told plaintiff that there was a new "corporate" job available with defendant that would meet his health needs.

After placing a call to defendant's corporate offices, Summers advised plaintiff that he had been given the corporate position and that he would be contacted the next day to come in to finalize the paperwork. Plaintiff then asked Summers to confirm that the offer was definite, given plaintiff's outstanding offer from the Medford Mail Tribune. Summers confirmed that plaintiff had been given the job and that the meeting the next day was a "mere formality." Plaintiff acknowledges that there was no discussion as to whether or not the corporate job would be terminable at will. After his discussion with Summers, plaintiff told the Medford Mail Tribune that he had decided not to accept its offer because he had received another job with defendant.

When plaintiff met with one of defendant's representatives the next day, the representative told plaintiff that he had not been hired for the corporate job. Instead, the representative was meeting with plaintiff to interview him as one possible candidate for the corporate job. Ultimately, defendant did not hire plaintiff for that job. When plaintiff then tried to accept the Medford Mail Tribune's prior job offer, that job had been filled. Plaintiff later accepted a different sales representative job with the Medford Mail Tribune, but the job paid less than the

previously offered job at the Medford Mail Tribune. Plaintiff subsequently accepted yet another job that paid less than the promised corporate job with defendant.

As noted, plaintiff brought this action against defendant on a theory of promissory estoppel, fraudulent misrepresentation, and unlawful employment practices, including employment discrimination under ORS 659A.112.[2] As part of his claim for damages, plaintiff sought economic damages for the income that he would have earned in the corporate job with defendant. Defendant filed a motion for partial summary judgment, arguing that, because the corporate job was an at-will position that defendant could have fired plaintiff from at any time, plaintiff had no reasonable basis to rely on the corporate job offer, as required for both the promissory estoppel and fraudulent misrepresentation claims. Moreover, defendant argued, it would be illogical to hold defendant liable for damages that plaintiff would have been unable to recover had he been terminated on his first day. The trial court granted summary judgment on the promissory estoppel and fraudulent misrepresentation claims, noting that, even if plaintiff had relied on all the statements that Summers allegedly had made, plaintiff would lose

"[b]ecause they didn't tell him you got a job for the rest of your life here. *** He didn't rely on having a job for more tha[n] a day because *** nobody said to him, and you're going to have this job for X amount of days, months, or years. *** [H]e couldn't rely on something that was never said to him."

Plaintiff dismissed his unlawful employment practices claim without prejudice and appealed, arguing that the trial court erred in granting defendant's motion for partial summary judgment.

On appeal, the Court of Appeals affirmed, relying in large part on its prior decision in *Slate v. Saxon, Marquoit, Bertoni & Todd*, 166 Or App 1, 999 P2d 1152, *rev den*, 330

_____

[2] ORS 659A.112 was amended in 2007 and 2009. *See* Or Laws 2007, ch 70, § 291; Or Laws 2009, ch 508, § 6. However, because we do not address plaintiff's claim under ORS 659A.112, we need not consider the impact of those amendments. Therefore, all references to ORS 659A.112 are to the 2011 version of the statute.

Or 375 (2000). The Court of Appeals began by summarizing the *Slate* decision:

> "The plaintiff in *Slate* had been a law clerk at the defendant law firm, which offered him a position as an associate attorney, conditioned on the plaintiff passing the Oregon bar examination and on the defendants' renewal of some juvenile and indigent-defense contracts. Those conditions later were met, yet the 'defendants advised plaintiff that they were terminating the planned employment arrangement, although plaintiff had not yet begun working for them.' The plaintiff sued for breach of contract and promissory estoppel, claiming damages associated with having taken the bar examination in Oregon, instead of in another jurisdiction, and with having not sought alternative employment. The trial court granted summary judgment to the defendants, and we affirmed.

> "Our holding in *Slate* turned on the at-will nature of the employment that the defendants had offered the plaintiff. \*\*\* We \*\*\* held, for two reasons, that the trial court correctly had granted the defendants' motion for summary judgment on the plaintiff's promissory-estoppel claim. First, because the promised employment was at will, 'there could have been no reasonable basis for reliance on' that promise. In other words, the plaintiff could not *reasonably* have understood that the promised employment would last for any particular length of time. Second, any monetary losses that the plaintiff experienced were not 'attributable to the promise [of employment] *per se*.' That is, the plaintiff would have experienced the same losses if the defendants had hired him, but had 'discharged [him] immediately after he came to work rather than before.' Because the plaintiff could not have recovered damages for being terminated from the at-will job, he also could not have recovered damages from not having been hired into that position."

*Cocchiara*, 247 Or App at 549-50 (bracketed alterations in *Cocchiara*; emphasis in original; internal citations to *Slate* omitted).

Noting that the corporate job in this case was also an at-will job, the Court of Appeals applied the reasoning from *Slate* that "'[i]t is circular and not based on reality to argue, as [the plaintiff] does, that either his reliance or his change in position was attributable to the promise of

at will employment rather than the at will employment contract itself.'" *Id.* at 551 (alterations added; quoting *Slate*, 166 Or App at 7). The court reasoned that plaintiff "could not reasonably rely on defendant['s] statements as having promised anything other than at-will employment," from which he could have been fired at any time. *Id.* at 550-51. In addition, the court noted that plaintiff had claimed damages associated with not being hired for the corporate job, but had not claimed damages associated with turning down the original sales representative job with the Medford Mail Tribune. *Id.* at 551. The court stated:

> "*Slate* is based largely on the plaintiff's inability to prove that he suffered any damages from the defendants' breach of a promise to give him at-will employment. Our holding here similarly is based on our conclusion that plaintiff has not alleged any claim for damages that fairly can be said to spring from defendant['s] failure to give him the corporate job; as a matter of law, plaintiff could not prove any entitlement to lost wages from that job, as defendant[ ] could have fired him from it at any time."

*Id.* at 554. Based on that reasoning, the Court of Appeals agreed that plaintiff could not succeed on his promissory estoppel claim. *Id.* at 551.

Furthermore, the Court of Appeals determined that the rationale in *Slate* was not limited to promissory estoppel claims, contrary to what plaintiff urged, because fraudulent misrepresentations claims, like promissory estoppel claims, require proof of reasonable reliance and damages. *Id.* at 551-52. The court, therefore, determined that plaintiff could not recover on his claim for fraudulent misrepresentation "[f]or the same reason that defendant['s] promise to hire plaintiff into the corporate job cannot subject them to liability on a promissory-estoppel theory under *Slate*[.]"[3] *Id.* at 552.

---

[3] The Court of Appeals also rejected plaintiff's alternative argument that the corporate job was offered to accommodate plaintiff's health condition, pursuant to ORS 659A.112, and therefore was no longer terminable at will. *Cocchiara*, 247 Or App at 554-56. Plaintiff renews essentially that same argument on review, but, as explained more fully below, we hold that plaintiff is not barred from bringing a promissory estoppel or fraudulent misrepresentation claim solely because the corporate job was terminable at will. For that reason, we do not reach plaintiff's alternative argument regarding ORS 659A.112 and its effect on the at-will nature of the corporate job.

On review, plaintiff renews his argument that a prospective employee can bring both promissory estoppel and fraudulent misrepresentation claims in the context of at-will employment. Plaintiff asserts that *Slate* was incorrectly decided because it ignored the reality that prospective employees often rely on offers of at-will employment and that employers expect prospective employees to rely on those offers. Plaintiff argues that barring promissory estoppel claims entirely in the context of at-will employment is poor public policy and that the issue of reasonable reliance should instead be determined by a jury. Moreover, plaintiff argues, *Slate* is distinguishable on its facts.

Plaintiff further asserts that *Slate* should not apply to claims for fraudulent misrepresentation, and he cites two Ninth Circuit decisions interpreting Oregon law regarding fraudulent misrepresentation in support of his position. In both of those cases, the federal court allowed plaintiffs who had been offered at-will employment to bring claims for fraudulent misrepresentation based on statements made by their prospective employers during the hiring process. *Arboireau v. Adidas-Salomon AG*, 347 F3d 1158 (9th Cir 2003) (employee terminated seven months into at-will job due to relocation of job overseas could survive summary judgment on fraudulent misrepresentation claim due to employer's failure during hiring to disclose likelihood that job might be relocated); *Meade v. Cedarapids, Inc.*, 164 F3d 1218 (9th Cir 1999) (employer's false statements during hiring regarding employer growth provided basis for at-will employees to survive summary judgment on fraudulent misrepresentation claim after employer's plant closed).

Defendant responds that allowing promissory estoppel and fraudulent misrepresentation claims in the context of at-will employment, as plaintiff proposes, would create "drastic exceptions" to the at-will employment doctrine that would render it meaningless. Defendant argues that this court should instead adopt the holding from *Slate* and other jurisdictions that a prospective employee cannot reasonably rely on an offer of at-will employment. A contrary holding, defendant argues, would create an unworkable rule regarding how long an employer would have to employ new

hires. Moreover, defendant suggests, employees can avoid the result faced by plaintiff in this case by entering into employment contracts that remove the at-will presumption. Alternatively, defendant argues that, even if plaintiff could reasonably rely on the offer of employment in this case, he still loses because (1) he did not plead damages associated with turning down the job with the Medford Mail Tribune, and (2) he is not entitled to damages resulting from not being hired for the corporate job because defendant could have fired him at any time.

## AT-WILL EMPLOYMENT DOCTRINE

Both parties agree that, in Oregon, "the general rule is that an employer may discharge an employee at any time and for any reason, absent a contractual, statutory, or constitutional requirement to the contrary." *Washburn v. Columbia Forest Products, Inc.*, 340 Or 469, 475, 134 P3d 161 (2006). The focus of the at-will employment doctrine is on termination: Both the employer and the employee have a right to terminate the employment relationship for any reason or for no reason without liability. Samuel Williston & Richard A. Lord, 1 *A Treatise on the Law of Contracts* § 4:23, 722 (4th ed 2007) (noting that the at-will employment doctrine "eventually was adopted by the majority of American courts which accepted the notion that it provided each party to the employment at-will relationship with a right of termination"). As a result, when employment is at will, typically, neither party can expect the employment to continue for any specified period of time. *See Sheets v. Knight*, 308 Or 220, 234 n 13, 779 P2d 1000 (1989), *abrogated on other grounds by McGanty v. Staudenraus*, 321 Or 532, 901 P2d 841 (1995) ("Because at-will employees may be fired at any time and for any reason, they have no reasonable expectation of *continued* employment." (Emphasis added.)).

Perhaps because the at-will employment doctrine focuses on termination, courts have disagreed regarding the significance of the at-will nature of employment before employment begins. In particular, courts have disagreed whether it is reasonable to rely on an offer of at-will employment, which in turn affects whether an employer's termination of an at-will employment agreement before the

employee begins working is actionable under a theory of promissory estoppel or fraudulent misrepresentation. *See Slate*, 166 Or App at 5 (so noting as to promissory estoppel); P.G. Guthrie, Annotation, *Employer's Misrepresentation as to Prospect, or Duration, of Employment as Actionable Fraud*, 24 ALR 3d 1412 (1969) (last updated 2009) (compiling fraud cases). *Compare Grouse v. Group Health Plan, Inc.*, 306 NW2d 114, 115-16 (Minn 1981) (allowing claim for promissory estoppel where employer revoked offer of at-will employment after plaintiff resigned other employment and turned down other job offer in reliance on employer's offer), *with White v. Roche Biomedical Laboratories, Inc.*, 807 F Supp 1212, 1219-20 (DSC 1992), *aff'd*, 998 F2d 1011 (4th Cir 1993) ("[R]eliance on a promise consisting solely of at-will employment is unreasonable as a matter of law since such a promise creates no enforceable rights in favor of the employee other than the right to collect wages accrued for work performed."). We turn now to those claims for relief under Oregon law.

## PROMISSORY ESTOPPEL

Oregon has adopted the *Restatement* formulation of promissory estoppel:

> "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."

*Restatement (Second) of Contracts* § 90(1) (1981); *see Schafer et al v. Fraser et ux*, 206 Or 446, 468-69, 471-72, 290 P2d 190 (1955) (quoting with approval *Restatement of the Law of Contracts* § 90 (1932)).[4] The *Restatement (Second)* comments

---

[4] In *Schafer*, this court adopted the formulation of promissory estoppel in section 90 of *Restatement of the Law of Contracts* (1932). 206 Or at 468-69, 471-72. We quote section 90 of the *Restatement (Second) of Contracts* here because "most of the elements that must be established in order for a plaintiff to successfully plead and prove an offensive action based on promissory estoppel *** are similar or even identical under both Restatements." Samuel Williston & Richard A. Lord, 4 *A Treatise on the Law of Contracts* § 8:7, 138 (4th ed 2008). Moreover, although there are differences between the two Restatements, *id.*, this court has applied the *Restatement (Second) of Contracts* in other cases. *See, e.g.*, *Caba v. Barker*, 341 Or 534, 540, 145 P3d 174 (2006) (quoting *Restatement (Second) of Contracts*).

clarify that the requirement that enforcement be necessary to avoid injustice "may depend on the reasonableness of the promisee's reliance, [and] on its definite and substantial character in relation to the remedy sought," among other things. *Restatement (Second)* § 90 comment b.

Nothing in our case law or the *Restatement (Second)* suggests that a promisee's reliance is *per se* unreasonable if the underlying promise is for a contract that is terminable at will. Even *Slate*, on which defendant relies, does not foreclose a promissory estoppel claim in all cases of at-will employment. *See* 166 Or App at 7 ("Assuming that promissory estoppel ever could provide a basis for recovery under circumstances of this general kind, it cannot here." (Internal citation omitted.)). Far from foreclosing such a claim, the *Restatement (Second)* provides the following illustration in the section on promissory estoppel:

> "A applies to B, a distributor of radios manufactured by C, for a 'dealer franchise' to sell C's products. Such franchises are revocable at will. B erroneously informs A that C has accepted the application and will soon award the franchise, that A can proceed to employ salesmen and solicit orders, and that A will receive an initial delivery of at least 30 radios. A expends $1,150 in preparing to do business, but does not receive the franchise or any radios. B is liable to A for the $1,150 but not for the lost profit on 30 radios."

*Restatement (Second)* § 90 comment d, illustration 8. Similarly to that illustration, in this case Summers erroneously informed plaintiff that he had been given a job (that was terminable at will) and told him that he should turn down the position with the Medford Mail Tribune. The *Restatement (Second)* illustration indicates that the at-will nature of an underlying promise of employment does not bar a claim based on promissory estoppel, even if it might limit the nature of the damages available in some cases.

The *Restatement (Second)* approach is sound. An employer's legal right to fire an employee at any time and for any reason absent contrary contractual, statutory, or constitutional requirements does not carry with it a conclusive presumption that the employer will exercise that

right. *See Tadsen v. Praegitzer Industries, Inc.*, 324 Or 465, 471, 928 P2d 980 (1996) (rejecting the premise in a wrongful discharge case that "an employer should enjoy a conclusive presumption that, had it not discharged the employee illegally, it would have discharged him or her lawfully at any time after it in fact did so unlawfully"). Absent that presumption, it may be reasonable for an employee to rely on a promise of employment, because the employee may have reason to believe that the employer's right to terminate at will not be exercised before the employee begins work. Particularly where, as here, the employee has had a lengthy employment relationship with his employer, and the employer asserts the employee's value to the company, it may be reasonable for the employee to rely on the promise of employment, even though the job is terminable at will. We caution, however, that reasonableness is an issue for the jury, considering all the relevant circumstances. *See Schafer*, 206 Or at 481 (noting that issue of reliance in promissory estoppel claim "presented a question for the jury").

The Court of Appeals stated that "'[i]t is circular and not based on reality to argue, as [the plaintiff] does, that either his reliance or his change in position was attributable to the promise of at will employment rather than the at will employment contract itself.'" *Cocchiara*, 247 Or App at 551 (quoting *Slate*, 166 Or App at 7). In *Slate*, the court went on to clarify that no injustice would be avoided by allowing a party to recover for revocation of a promise of employment when the same party would not be entitled to recover for the "termination of the consummated contract." *Slate*, 166 Or App at 8. That is similar to the argument that defendant makes—and that we reject—in this case. Although an employer has a right to fire an at-will employee—though not for an unlawful reason—without liability, the fact that the employer has that right does not mean that a prospective employee can never reasonably rely on a promise of at-will employment. And if a prospective employee does reasonably rely on such a promise, a remedy may be necessary to avoid injustice.

In addition to challenging the reasonableness of plaintiff's reliance in the context of an at-will job, defendant argues that plaintiff cannot survive summary judgment

because plaintiff did not plead damages associated with the job that he turned down at the Medford Mail Tribune, and plaintiff is not entitled to recover damages associated with the corporate job because he could have been fired from that job at any time. In response, plaintiff asserts that a decision in this case should not turn on the type of damages that were or were not alleged because the motion for partial summary judgment was not focused on damages, and that, at least in the context of promissory estoppel, plaintiff would be entitled to damages associated with the loss of the corporate job if he proved the necessary elements of that claim. As noted, the Court of Appeals agreed with defendant:

> "Our holding here *** is based on our conclusion that plaintiff has not alleged any claim for damages that fairly can be said to spring from defendant['s] failure to give him the corporate job; *as a matter of law, plaintiff could not prove any entitlement to lost wages from that job, as defendant[ ] could have fired him from it at any time.*"

*Cocchiara*, 247 Or App at 554 (emphasis added).

At the outset, we note that defendant does not argue, nor did the Court of Appeals conclude, that, in general, damages associated with the corporate job could not be recovered in an action for promissory estoppel (or fraudulent misrepresentation). Instead, both defendant and the Court of Appeals relied on *Slate* for the proposition that the at-will nature of the corporate job precluded plaintiff from recovering lost wages for that job. However, this court has rejected a similar proposition in a wrongful discharge case. In *Tadsen*, 324 Or 465, a jury awarded front pay to an at-will employee who had alleged unlawful employment practices, including wrongful discharge, and this court affirmed the trial court's denial of a motion to strike the claim for front pay.[5] In that case, the employer had argued that an at-will employee cannot recover front pay because the employee has no "'right' to, or assurance of" future employment. *Tadsen*, 324 Or at 470-71. This court rejected that argument:

---

[5] The court in *Tadsen* explained that "front pay" is "a short hand term frequently used in federal courts and administrative agencies to refer to future lost pay and benefits." 324 Or at 467 n 5.

> "We decline to hold that an at-will employee never can prove the requisite facts for an award of front pay. The fact that at-will employment may be terminated for any nondiscriminatory purpose does not necessarily mean that the likely duration of that employment is incapable of proof to the required degree of certainty. At-will employment may be a factor that bears on whether the proof is sufficient in a particular case, but *the right to terminate someone's employment does not establish as a matter of law that an employee cannot prove the existence of front pay damages.*"

*Id.* at 471 (emphasis added).

Similarly, in this case, the fact that the corporate job was terminable at will, standing alone, does not create a conclusive presumption that plaintiff cannot prove damages related to the loss of that job. Instead, as in *Tadsen*, plaintiff may seek to prove what he would have earned in the corporate job and how long he likely would have remained in that job had he been hired as promised and allowed to start work. Although it may be easier for a plaintiff to prove the likely duration of employment in a wrongful discharge case, where the employee has a history of employment with the employer, a plaintiff is entitled to attempt to make such a showing outside the wrongful discharge context. Of course, if an employer lawfully fires an employee after the employee has started work, which could include firing the employee for no reason at all under the at-will employment doctrine, the employee will not be able to show that the job would have continued beyond that point. In this case, however, plaintiff was not allowed to start the corporate job; indeed, the employer told him that he had never actually been hired for that job, making it difficult for the employer to argue that plaintiff was lawfully fired. Thus, the general principle from *Tadsen* applies in this case: The at-will nature of the employment does not foreclose plaintiff from attempting to prove the likely duration of employment had he been hired as promised and allowed to start work, although "[a]t-will employment may be a factor that bears on whether the proof is sufficient in a particular case[.]" *Id.* Whether plaintiff is ultimately entitled to recover damages associated with not being hired for the corporate job, and in what amount, is not before this court. Nonetheless, defendant is not entitled to

judgment as a matter of law solely because the corporate job was terminable at will.

We recognize that allowing a prospective employee to bring a promissory estoppel claim raises practical concerns that the Court of Appeals articulated in *Slate*: "It would serve the interests of no one—least of all new professional persons in search of work—to discourage putative employers from discharging them earlier rather than later, under circumstances where there is no possibility that an actual employment relationship will ever exist." 166 Or App at 5-6. On the other hand, as the Eighth Circuit has recognized:

> "[I]f damages sustained in reasonable reliance on an employer promise were not available, the effect of such a rule would be to allow the employer to take advantage of whatever benefits might accrue to him by his inducing a potential employee to leave behind home and/or steady employment while at the same time being completely free of any obligation to keep his word."

*Bower v. AT & T, Technologies, Inc.*, 852 F2d 361, 364 (8th Cir 1988). Moreover, a rule barring a promissory estoppel (or fraudulent misrepresentation) claim would allow an employer to abuse its ability to induce the reliance of prospective employees. For example, an employer could promise an at-will job to multiple people to keep them available while the employer continued to vet them or to prevent them from accepting a position with a competitor. Acknowledging the possibility of reasonable reliance "encourages employers [and employees] to take [their] promises seriously," *id.*, and, more importantly, is consistent with the law of promissory estoppel.

## FRAUDULENT MISREPRESENTATION

This court has previously articulated the elements of a common law fraud claim, also known as an action in deceit, in more than one way, which is not surprising because "fraud" is "'a term so vague that it requires definition in nearly every case.'" *Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 405, 737 P2d 595 (1987) (quoting W. Page Keeton, *et al.*, *Prosser and Keeton on the Law of Torts* § 105, 727 (W. Page Keeton ed., 5th ed 1984)). For purposes of this case, two elements that are consistently

required for a fraud claim are relevant: justifiable reliance and damages. *See Riley Hill General Contractor*, 303 Or at 405 (listing five elements of action in deceit, including "'[j]ustifiable reliance upon the representation'" and "'[d]amage to the plaintiff, resulting from such reliance'" (quoting Keeton, *Prosser and Keeton on the Law of Torts* § 105 at 728)); *U.S. National Bank v. Fought*, 291 Or 201, 220-21, 630 P2d 337 (1981) (listing nine elements of an action in deceit, including "'reliance on [the misrepresentation's] truth,'" a "'right to rely thereon,'" and "'consequent and proximate injury'" (quoting *Conzelmann v. N. W. P. & D. Prod. Co.*, 190 Or 332, 350, 225 P2d 757 (1950))).

As noted, the Court of Appeals rejected plaintiff's fraud claim because the court determined that plaintiff could not prove the elements of justifiable reliance and damages. The court noted that the "alleged misrepresentations *** simply mirror the alleged promise"—that plaintiff had been given the corporate job—and the court had already held both that plaintiff could not reasonably rely on that promise and that plaintiff was not entitled to any damages associated with that promise. *Cocchiara*, 247 Or App at 550-52. Thus, the reasoning the court applied to the claim for promissory estoppel similarly applied to the claim for fraudulent misrepresentation.

As with our analysis above of the promissory estoppel claim, we disagree with the Court of Appeals that, for purposes of his fraud claim, plaintiff could not reasonably rely on defendant's statement that plaintiff had definitely been given the corporate job. In a fraud claim,

> "[t]he principal argument in support of some such requirement as justifiability of reliance would seem to be that of providing some objective corroboration to plaintiff's claim that he did rely. *** [T]he foolish nature of the plaintiff's conduct if he did rely is relevant primarily because of the likelihood that he did not rely."

Keeton, *Prosser and Keeton on the Law of Torts* § 108 at 749-50. In this case, a jury could find that plaintiff reasonably relied on defendant's promise, because a jury could find that he was planning to accept the job with the Medford Mail Tribune—as evidenced by plaintiff notifying Summers that

he planned to take that job—until defendant offered him the corporate job.

Moreover, the standard for reasonable or justifiable reliance in the context of fraud is both subjective and objective:

> "If he is a person of normal intelligence, experience and education, he may not put faith in representations which any such normal person would recognize at once as preposterous \*\*\* or which are shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth, and still compel the defendant to be responsible for his loss.
>
> "\*\*\*\*\*
>
> "[T]he matter seems to turn upon an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case[.]"

Keeton, *Prosser and Keeton on the Law of Torts* § 108 at 750-51 (footnote omitted). "Normal" people rely on offers of at-will employment every day, or at least a jury would be entitled to so find, based on the facts in a particular case. Here, a jury could find that plaintiff's reliance was not "preposterous" or based on plaintiff ignoring an obviously false statement, particularly given Summers' assertion about plaintiff's value to the company and his recommendation that plaintiff turn down the Medford Mail Tribune job.

In addition, allowing fraud claims in the context of at-will employment serves the purpose behind allowing fraud claims: "The type of interest protected by the law of deceit is the interest in formulating business judgments without being misled by others—in short, in not being cheated." *Riley Hill General Contractor*, 303 Or at 407. If employers could make misleading statements to prospective at-will employees without liability, business judgments regarding employment would not be protected from deceit. Business judgments regarding at-will employment inherently involve some risk, and a prospective employee (or employer) should be able to evaluate that risk without the interference of fraud.

Although a prospective employee can bring a fraudulent misrepresentation claim in the context of at-will employment, we emphasize that there are limitations on those claims. Most notably, a plaintiff will have to prove damages to bring a successful claim. *See, e.g.*, *Riley Hill General Contractor*, 303 Or at 405 (listing damage to the plaintiff as an element of a fraud claim). Nonetheless, plaintiff's decision to plead only damages associated with the loss of the corporate job—rather than damages associated with turning down the Medford Mail Tribune job—does not defeat his fraud claim, as the Court of Appeals suggested. *See Cocchiara*, 247 Or App at 552. As noted, the at-will nature of employment does not create a conclusive presumption barring a plaintiff from recovering future lost pay where the employee has been unlawfully terminated from the job, *Tadsen*, 324 Or at 470-71, or, as in this case, where plaintiff was never hired as promised or allowed to start work. Because this case was decided on a motion for summary judgment, however, whether plaintiff can sufficiently prove his damages associated with not being hired for the corporate job is not now before this court.

For those reasons, the Court of Appeals erred in determining that, as a matter of law, plaintiff could not reasonably rely on defendant's representations and could not recover future lost wages solely because of the at-will nature of the corporate job. We emphasize that our holding goes no further, and we express no view as to whether plaintiff's reliance was in fact reasonable, whether plaintiff can satisfy the other elements of his promissory estoppel and fraudulent misrepresentation claims, or whether plaintiff is entitled to recover his claimed damages.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.